IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

CHRISTINE M. THIERRY,　　　　　　)
　　　　　　　　　　　　　　　　　)　　No. 5:21-CV-04421-JMG
　　　　　　Plaintiff　　　　　　　)
　　　　　　vs.　　　　　　　　　　)
RICHARD MARTIN,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Defendant　　　　　　　)

DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT

AND NOW, this 22nd day of December, 2021, before this Honorable Court comes the

Defendant, Richard Martin, by and through his legal counsel, Sigmon & Sigmon, P.C., and files this

Motion to Dismiss the Plaintiff's Amended Complaint pursuant to Rule 12 (b) (6) of the Federal Rules

of Civil Procedure, and in support of said Motion cites the following:

1.　　　On September 21, 2021, the Plaintiff, pro se, filed her Complaint in the above-

captioned matter.  See the attached Exhibit "A".

2.　　　On September 27, 2021, the Defendant received a Waiver of Service of Summons

Form from the Plaintiff.

3.　　　On October 15, 2021, the Defendant mailed his signed Waiver of Service of Summons

Form back to the Plaintiff, by first-class mail.

4.　　　On July 26, 2021, the Plaintiff filed an Amended Complaint in the case of Christine

M. Thierry, Plaintiff, vs. Richard Martin, Defendant, in the Court of Common Pleas of Northampton

County, Pennsylvania, at Docket Number C-48-CV-2019-12041.  See the attached Exhibit "B".

5.　　　On August 2, 2021, the Defendant filed an Answer and New Matter in response to the

Plaintiff's Amended Complaint in said Northampton County case.

6.　　　The Plaintiff's filing of the instant action in this Court, at Docket Number 5:21-CV-

04421-JMG, was done arbitrarily, vexatiously, and in bad faith.

7.      The filing of the instant action in the United Stated Federal District Court by the Plaintiff was done solely to harass the Defendant, to cause unnecessary delay in the aforesaid Northampton County case, and to needlessly increase the cost of litigation for the Defendant.

8.      The Plaintiff has intentionally, arbitrarily, and vexatiously violated the principle of "prior pending actions", by filing this Federal Court lawsuit some fifty-seven (57) days after filing her Amended Complaint in the aforesaid Northampton County litigation.

9.      The sole purpose of the Plaintiff in filing the instant Federal Court lawsuit is to needlessly harass the Defendant, cause unnecessary delay, and to needlessly increase the Defendant's cost of litigation, and in particular, to needlessly increase money that the Defendant has had to spend in additional legal fees.

10.     The Original Complaint filed by the Plaintiff in this Federal Court case is identical to the Amended Complaint filed by the Plaintiff in the Northampton County litigation.

11.     It is obvious that the sole purpose of the Plaintiff, in filing this Federal Court lawsuit, is to arbitrarily and needlessly annoy, harass, vex, and bother the Defendant with additional legal fees and costs.

12.     On December 8, 2021, the Plaintiff filed an Amended Complaint in this case.  See the attached Exhibit "C".

13.     The Amended Complaint filed by the Plaintiff in this case on December 8, 2021, is 100% identical, in every respect, to the original Complaint filed by the Plaintiff in this case on September 21, 2021.

14.     Both the original Complaint and the Amended Complaint filed by the Plaintiff in this Federal Court case are identical as to every word, every paragraph, and every Exhibit.

15.     It is manifestly clear that the sole purpose of the Plaintiff, in filing her Amended Complaint in this Federal Court case, was to arbitrarily and needlessly annoy, harass, vex, and bother the Defendant with additional legal fees and costs, in violation of Rule 11 (b) (1) of the Federal Rules of Civil Procedure.

WHEREFORE, the Defendant requests that this Honorable Court DISMISS the Plaintiff's Amended Complaint in this case, WITH PREJUDICE, at cost of the Plaintiff.

SIGMON & SIGMON, P.C.

BY: _____

Mark S. Sigmon, Esquire
*Attorney for Defendant Richard Martin*
Attorney I.D. No. 21656
146 East Broad Street
P.O. Box 1365
Bethlehem, PA  18016-1365
610-865-3404 (phone)
610-865-6295 (facsimile)
Mark@sigmon-sigmon.com

cc:    Christine M. Thierry, Pro Se

3

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| CHRISTINE THIERRY | RICHARD MARTIN |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Pro se | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28:1330 Breach of Contract

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No [✓] Yes [ ]        Judge Previously Assigned

If yes, was this case Vol. [ ] Invol. [ ] Dismissed. No [ ] Yes [ ] If yes, give date _____ & Case No. _____

IS THIS AN INTERNATIONAL ARBITRATION CASE?    No [x]    Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*        NATURE OF SUIT

**TORTS**

**ACTIONS UNDER STATUTES**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | [ ] 422 APPEAL 28 USC 158 | [ ] 375 FALSE CLAIMS |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | | | | [ ] 376 QUI TAM |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 690 OTHER | | [ ] 410 ANTITRUST |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | | | | | [ ] 430 BANKS & BANKING |
| | [ ] 340 MARINE | **PERSONAL PROPERTY** | **PROPERTY RIGHTS** | | [ ] 450 COMMERCE |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT LIABILITY | | [ ] 820 COPYRIGHTS | | [ ] 460 DEPORTATION |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 350 MOTOR VEHICLE | [ ] 370 OTHER FRAUD | [ ] 830 PATENT | | [ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 371 TRUTH IN LENDING | [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION | | [ ] 480 CONSUMER CREDIT |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | [ ] 360 OTHER PERSONAL INJURY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | [ ] 840 TRADEMARK | **SOCIAL SECURITY** | [ ] 490 CABLE/SATELLITE TV |
| | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 160 STOCKHOLDERS SUITS | | | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 862 BLACK LUNG (923) | |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | |
| [x] 190 OTHER CONTRACT | | **PRISONER PETITIONS** | [ ] 720 LABOR/MGMT RELATIONS | [ ] 864 SSID TITLE XVI | |
| [ ] 195 CONTRACT PRODUCT LIABILITY | **ACTIONS UNDER STATUTES** | [ ] 463 ALIEN DETAINEE | [ ] 740 RAILWAY LABOR ACT | [ ] 865 RSI (405(g)) | [ ] 890 OTHER STATUTORY ACTIONS |
| | | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | [ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA) | **FEDERAL TAX SUITS** | [ ] 891 AGRICULTURAL ACTS |
| [ ] 196 FRANCHISE | **CIVIL RIGHTS** | [ ] 530 HABEAS CORPUS | [ ] 790 OTHER LABOR LITIGATION | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 893 ENVIRONMENTAL MATTERS |
| | | [ ] 535 DEATH PENALTY | [ ] 791 EMPL RET INC SECURITY ACT (ERISA) | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 895 FREEDOM OF INFORMATION ACT |
| | [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner) | [ ] 540 MANDAMUS & OTHER | | | [ ] 896 ARBITRATION |
| **REAL PROPERTY** | [ ] 441 VOTING | | **IMMIGRATION** | | [ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OF APPEAL OF AGENCY DECISION |
| [ ] 210 LAND CONDEMNATION | [ ] 442 EMPLOYMENT | **PRISONER CIVIL RIGHTS** | [ ] 462 NATURALIZATION APPLICATION | | |
| [ ] 220 FORECLOSURE | [ ] 443 HOUSING/ ACCOMMODATIONS | [ ] 550 CIVIL RIGHTS | [ ] 465 OTHER IMMIGRATION ACTIONS | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 555 PRISON CONDITION | | | |
| [ ] 240 TORTS TO LAND | | [ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT | | | |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 448 EDUCATION | | | | |

**EXHIBIT A**

*Check if demanded in complaint:*

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 125    OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [X] YES [ ] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

JUDGE _____    DOCKET NUMBER _____

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

Case 5:21-cv-04421-JMG   Document 10   Filed 11/24/21   Page 4 of 58

*(PLACE AN x IN ONE BOX ONLY)* **ORIGIN**

[X] 1 Original Proceeding

[ ] 2 Removed from State Court
- [ ] a. all parties represented
- [ ] b. At least one party is pro se.

[ ] 3 Remanded from Appellate Court

[ ] 4 Reinstated or Reopened

[ ] 5 Transferred from (Specify District)

[ ] 6 Multidistrict Litigation (Transferred)

[ ] 7 Appeal to Dist Judge from Magistrate Juc

[ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)*     **BASIS OF JURISDICTION**

[ ] 1 U.S. PLAINTIFF  [ ] 2 U.S. DEFENDANT  [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)  [X] 4 DIVERSITY

*IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [X] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [X] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Christine M. Thierry
542 Sagg Main Street
Apt 519
Sagaponack, NY 11962

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

3110 EASTHILL DRIVE
BETHLEHEM, PA 18017

NORTHAMPTON COUNTY, PA

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [X] MANHATTAN

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____    ADMITTED TO PRACTICE IN THIS DISTRICT
RECEIPT # _____
[ ] NO
[ ] YES (DATE ADMITTED Mo. _____ Yr. _____)
Attorney Bar Code # _____

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| Christine M. Thierry <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> Richard Martin <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Richard Martin
3110 Easthill Dr. Bethlehem, PA 18017

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Christine M. Thierry
542 Sagg Main St #519
Sagaponack, NY 11962

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:      09/21/2021

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CIVIL DIVISION

Christine M. Thierry,
          Plaintiff
          vs.
Richard Martin,
          Defendant

: Case No.
:
:
:
: JURY TRIAL
:

## COMPLAINT FOR A CIVIL CASE
### (28 U.S.C. § 1332; Diversity of Citizenship)

1.    The amount in controversy, exclusive of interest and costs, exceeds Seventy Five Thousand Dollars ($75,000.00).

2.    Plaintiff Christine M. Thierry is an adult individual residing at 542 Sagg Main Street #519 Sagaponack, NY 11963 in Suffolk County New York.  Her email is CT1869@gmail.com and phone is 631-599-2760.

3.    Defendant Richard Martin is an adult individual residing at 3110 Easthill Dr. Bethlehem, PA 18017 in Northampton County, PA.  His email and phone are rfm193910@yahoo.com and 484-707-4978.

4.    On or about June 24, 2019, Plaintiff and Defendant entered into a certain Residential Lease ("Lease or Contract"), whereby Defendant cosigned a Lease for a house owned by the Plaintiff and located at 1142 Railroad Street, Northampton County, Bethlehem Pennsylvania 18015, more fully described in the Lease ("Premises").  A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

5.    Elyssa Beltran is the "Tenant" on the Lease.

6.    Richard Martin is the "CoSigner" on the Lease.

7.    Ms. Beltran was living with Richard Martin before she became tenant to plaintiff.

8.    Ms. Beltran provided to plaintiff's property manager Richard Martin's address as

1

her new address after moving out of the premises.

9.    Richard Martin paid the rent for the premises.

10.   Richard Martin paid the utilities for the premises.

11.   Richard Martin scheduled landlord inspections with landlord for the premises.

12.   Richard Martin scheduled real estate showings for the premises.

13.   Richard Martin granted access to the premises.

14.   Mr. Martin was at premises for landlord inspections.

15.   Richard Martin was responsible for the care of the premises.

16.   Richard Martin was financially responsible for the lease and all its terms.

17.   Ms. Beltran was under Mr. Martin's financial care during the term of the lease.

18.   Ms. Beltran was under Mr. Martin's emotional care during the term of the lease.

19.   Ms. Beltran was could not or would not care for herself as an adult during the term of the lease.

20.   The parties had an agreement that Mr. Martin was to be contacted for any issues including damages, rent, fees regarding the lease and/or premises.

21.   Ms. Beltran and Mr. Martin used the premises for illicit activities.

22.   Ms. Beltran and Mr. Martin used the premises for illegal activities.

23.   Mr. Martin was charged with criminal harassment of plaintiff.

24.   Mr. Martin intentionally allowed the premises to be severely damaged.

25.   Mr. Martin intentionally interfered with plaintiff's business.

26.   Mr. Martin committed assault and battery against plaintiff.

27. The lease required "Rent" to be paid the 24th of each month in the sum of $1,190.

28. The lease allowed for a 2-day grace period for any fees that are due before late fees are charged of $10 per day at line 48.

29. The lease states, "all other payments due…are considered Additional Rent. Failure to pay Additional Rent is a breach of lease…" Lines 49-50.

30. The lease states, "all payments will be applied against outstanding Additional Rent that is due before they will be applied against the current rent due." Lines 51-52.

31. District Magistrate granted plaintiff the right to end lease early in addition to awarding plaintiff monetary damages of $2,646.05 on December 26, 2020, due to multiple violations of lease including damages and failure to pay. A true and correct copy is attached as Exhibit "B".

32. The parties agreed to stop violating lease including removing hazardous debris and garbage amassed on the exterior of the premises, and signed an addendum on December 26, 2019, after the hearing referenced above in Line 34.

33. Plaintiff honored her responsibilities of the agreement in line 35 and did not have sheriff provide eviction services, a right which she was awarded at the Magistrate Court.

34. The defendant immediately breached the agreement noted line 35.

35. The defendant owes monies per lease and has refused to pay it.

3

36.     The contract has been breached.

37.     At expense to plaintiff, a collection company was hired to collect amount owed from plaintiff as it was accruing at $10 per day late fee per the lease.

38.     The defendant acknowledged receipt of the bills, but did not pay any bills from the collection company.

39.     At expense to plaintiff, a property manager was then hired to resolve the lease violations and collect monies owed from plaintiff which was accruing at $10 per day per the lease.

40.     The defendant did not pay bills from the property management company.

41.     The collection company and property manager were unsuccessful in collecting monies owed to plaintiff.

43.     In accordance with the lease *all payments [from defendant] were applied against outstanding Additional Rent that is due before they were applied against the current rent.*

44.     The Defendant has been made aware rent, fees and costs are past due.

45.     Defendant was made aware of multiple lease violations.

46.     Defendant was made aware of accruing fees.

47.     Defendant refused to comply or correct violations.

48.     Defendant directly contributed to damages owed to plaintiff.

49.     Defendant has firsthand knowledge of the Premises.

50.     The lease on lines 4-7 states defendant "is individually responsible for all obligations of the Lease, including Rent, late fees, damages, and other costs."

4

51.     Defendant was made aware late fees are accruing in accordance with lease.

52.     Defendant is aware property has been damaged.

53.     Defendant is aware the payments he made were applied to late fees and property damage, not the rent, in accordance with lease.

54.     Defendant did not pay for the rent during the last several months of the lease.

55.     Defendant has failed to mitigate damages.

56.     Defendant is liable to plaintiff for all costs and expenses not paid on lease in accordance with lease.

57.     Defendant willfully and negligently continues to deny plaintiff compensation he agreed to in lease and;

58.     As a direct result of the actions of the Defendant failing to honor the contract in denying Plaintiff legally required rent and fees, Plaintiffs have been damaged as follows:

> a.     Collection, property management and administrative fees in the amount of Five Thousand Dollars ($5,000.00);
>
> b.     Loss of use of property in the amount of Nine Thousand Dollars ($9,000.00);
>
> c.     Repairs and restore the Premises in the amount of Twenty-One Thousand Five Hundred Dollars ($21,500.00);
>
> d.     Accruing late fees;
>
> e.     Legal fees of Two Thousand Dollars ($2,402);
>
> f.     Other fees to be decided at trial including requested punitive damages;

## COUNT I - BREACH OF CONTRACT

5

59.     Paragraphs 1 through 58 are incorporated herein by reference in their entirety.

60.     Plaintiff fully complied with all the terms and conditions of the Lease.

61.     As a direct result of the Defendants' and tenant's material breach of the Lease, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.

## COUNT II - FRAUDULENT MISREPRESENTATION

62.     Paragraphs 1 through 61 are incorporated herein by reference in their entirety.

63.     On behalf of the Plaintiff, Defendant Richard Martin fraudulently misrepresented to the tenant that tenant need to comply with lease.

64.     The fraudulent misrepresentation set forth in Paragraphs 63 above was material to the transaction in question, and was made with knowledge that it was false, or with recklessness as to whether it was true or false.

65.     Further, the fraudulent misrepresentation set forth in Paragraphs 63-64 above was done so with the intent of misleading the tenants to continue to damage Plaintiff by relying on the misrepresentations.

66.     Being that the tenant refused communication or to allow access to property unless defendant instructed her to do so, and the defendant instructed all communications were to be

6

routed through him, tenant relied on the fraudulent misrepresentation made to her by Defendant Richard Martin.

67.     As a direct result of tenant's reliance on the fraudulent misrepresentation made by the Defendant, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

68      Defendants' conduct in making the fraudulent misrepresentation set forth in Paragraphs 63-66 above was willful, wanton and outrageous, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant, plus punitive damages, interest and costs.


## COUNT III - NEGLIGENT MISREPRESENTATION

69.     Paragraphs 1 through 68 are incorporated herein by reference in their entirety.

70.     In the alternative, Defendant Richard Martin negligently misrepresented to the tenant that they did not need to pay their rent.

71.     The defendant Martin negligently misrepresented to the tenant that they did not need to comply with lease.

72.     The negligent misrepresentation set forth in Paragraphs 70-71 above made by Defendant was material to the transactions in question.

7

73.     Defendant Richard Martin made the negligent misrepresentation to tenant set forth in Paragraphs 70-72 above without knowledge of its truth or falsity, or in the alternative, should have known that said misrepresentation was false.

74.     Defendant made the negligent misrepresentation to tenant set forth in Paragraphs 70-72 above with the intent to induce the tenant to rely on said misrepresentation, and to continue to violate contract.

75.     Being that the tenant would only take calls from the Defendant, not the Plaintiff, tenant relied upon the negligent misrepresentation made to them by Defendants to not comply with the contract.

76.     As a direct result of tenant's reliance on the negligent misrepresentation made to her by Defendant, as more fully set forth in Paragraphs 69-72 above, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.

## COUNT IV - INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL/BUSINESS RELATIONS

77.     Paragraphs 1 through 76 are incorporated herein by reference in their entirety.

78.     In acting as a landlord, Plaintiff enters contractual relationships with tenants, and the Plaintiff seeks to find tenants who honor contractual relationships.

8

79.     Further, given the state of the property which was 95% gut renovated and new at the time Defendants cosigned the lease and entered into contract with Plaintiff, numerous damages have occurred in violation of contract that will required loss of rents, loss of sales, carrying costs, significant construction, loss of showings, and loss of customers to repair.

80.     The purpose of the Defendants' unlawful actions was to interfere with the existing contractual relationship of the Plaintiffs and her tenant, and to prevent the prospective contractual relationships of the Plaintiffs and her new tenants or buyers from occurring.

81.     The Defendants' unlawful actions against the Plaintiffs were taken without privilege or justification.

82.     As a direct result of the Defendants' unlawful actions in causing tenant Elyssa Beltran to keep possession of, and continue to damage Premises, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

83.     Defendants' unlawful conduct in was willful, wanton and outrageous, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.

## COUNT V - CIVIL CONSPIRACY

84.     Paragraphs 1 through 83 are incorporated herein by reference in their entirety.

9

85.     Plaintiff believes, and therefore aver, that the Defendant acted in concert when Defendant's actions to have tenant keep possession of, allow further damage to premises, and deny Plaintiffs from rights to her Premises were unlawful on multiple occasions.

86.     Plaintiff believes, and therefore aver, that Defendant took those unlawful actions on multiple occasion with malice aforethought and intended to injure the Plaintiff by preventing her possession and full access to the Premises, and therefore, the operation of her business.

87.     One occasion was on June 7, 2020, when Defendant acted in concert with others when defendant assaulted, committed battery, harassed plaintiff, and also denied plaintiff from rights to her premises. These actions were all unlawful.

88.     As a direct result of the Defendants' unlawful actions, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

89.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiffs, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## COUNT VI – ASSAULT

90.     Paragraphs 1 through 89 are incorporated herein by reference in their entirety.

91.     On June 7, 2020, Defendant assaulted plaintiff.

92.     The defendant intentionally and maliciously caused harm to plaintiff.

10

93.     The defendant chased plaintiff then shoved her when she reached a closed exit door, then informed her he was spitting COVID into plaintiff's face.

94.     The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

95.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiffs to punitive damages.

96.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiffs, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.


## COUNT VII – BATTERY

97.     Paragraphs 1 through 96 are incorporated herein by reference in their entirety.

98.     On June 7, 2020 Defendant committed battery against plaintiff.

99.     The defendant intentionally and maliciously caused harm to plaintiff.

100.    The defendant chased plaintiff then shoved her when she reached a closed exit door, then informed her he was spitting COVID-19 into plaintiff's face.

101.    After the police left the premises after charging defendant with harassment, the defendant continued to harass plaintiff at the premises putting her in fear for her life.

11

102.    The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

103    Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## COUNT VIII – HARASSMENT

104.    Paragraphs 1 through 103 are incorporated herein by reference in their entirety.

105.    On June 7, 2020 Defendant harassed plaintiff.

106.    The defendant intentionally and maliciously caused harm to plaintiff.

107.    The defendant chased plaintiff and shoved her, then informed her he was spitting COVID-19 into plaintiff's face.

108.    After the police left the premises after charging defendant with criminal harassment, the defendant continued to harass plaintiff at the premises putting her in fear for her life.

109.    The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

110.    Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## VIII. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information,and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

CHRISTINE M. THIERRY

DATE: 9/21/2021                    By: _____

CHRISTINE M. THIERRY

542 Sagg Main St #519
Sagaponack, NY 11962
(610) 310-4856

13

Exhibit "A"

14

# RESIDENTIAL LEASE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

RL

## PARTIES

| | |
|---|---|
| **TENANT(S):** Elyssa Beltran | **LANDLORD(S):** Christine M Thierry |
| **TENANT'S MAILING ADDRESS:**<br>3110 Easthills Dr Bethlehem PA 18017 | **LANDLORD'S MAILING ADDRESS:**<br>414 W 49th St Apt 1D<br>NY, NY 10019 |

## PROPERTY

Property Address                    1142 Railroad St

| | | | |
|---|---|---|---|
| in the municipality of | Bethlehem | Unit | ZIP 18015 |
| in the School District of | Bethlehem | County of | Northampton |

, in the Commonwealth of Pennsylvania

## TENANT'S RELATIONSHIP WITH PA LICENSED BROKER

☒ **No Business Relationship (Tenant is not represented by a broker)**

| | |
|---|---|
| Broker (Company) | Licensee(s) (Name) |
| Company License # | State License # |
| Company Address | Direct Phone(s) |
| | Cell Phone(s) |
| Company Phone | Fax |
| Company Fax | Email |
| Broker is: | Licensee(s) is: |
| ☐ Tenant Agent (Broker represents Tenant only) | ☐ Tenant Agent (all company licensees represent Tenant) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Tenant Agent with Designated Agency (only licensee(s) named above represent Tenant) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Tenant)

## LANDLORD'S RELATIONSHIP WITH PA LICENSED BROKER

☒ **No Business Relationship (Landlord is not represented by a broker)**

| | |
|---|---|
| Broker (Company) | Licensee(s) (Name) |
| Company License # | State License # |
| Company Address | Direct Phone(s) |
| | Cell Phone(s) |
| Company Phone | Fax |
| Company Fax | Email |
| Broker is: | Licensee(s) is: |
| ☐ Landlord Agent (Broker represents Landlord only) | ☐ Landlord Agent (all company licensees represent Landlord) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Landlord Agent with Designated Agency (only licensee(s) named above represent Landlord) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Landlord)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Tenant and Landlord in the same transaction. A Licensee is a Dual Agent when a Licensee represents Tenant and Landlord in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Tenant and Landlord. If the same Licensee is designated for Tenant and Landlord, the Licensee is a Dual Agent.

**By signing this Agreement, Tenant and Landlord each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

Tenant Initials: _____     RL Page 1 of 7     Landlord Initials: _____

THIS FORM SHOULD NOT BE USED FOR THE LEASE OF A MANUFACTURED HOME

Pennsylvania Association of Realtors®     COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev 8/17 rel 1/18

Howard Hanna The Frederick Group, 7310 Winchester Road Suite 214, Allentown PA 18104          Phone 6105104050          Fax 8886133585          Elyssa Beltran
Christine Thierry          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

1. **LEASE DATE AND RESPONSIBILITIES**
   This Lease for the Property, dated _____ **June 24, 2019** _____, is between the Landlord and Tenant. Each Tenant is individually responsible for all of the obligations of this Lease, including Rent, fees, damages and other costs.

2. **CO-SIGNERS**
   Co-signers: Richard Martin 3110 Easthills Dr Bethlehem PA 18017

   Each Co-signer is individually responsible for all obligations of this Lease, including Rent, late fees, damages and other costs. Co-signers do not have the right to occupy the Property as a tenant without the Landlord's prior written permission.

3. **PROPERTY CONTACT INFORMATION**
   Rental Payments (see Paragraph 7(H) for additional information)
   Payable to: Christine M Thierry      Phone: **(610) 310-4856**
   Address: 414 W 49th St Apt 1D NY, NY 10019
   **Maintenance Requests**
   Contact: **SAME**      Phone: **(610) 310-4856**
   Address: 414 W 49th St Apt 1D NY, NY 10019
   Email: ct1869@gmail.com      Website:
   **Emergency Maintenance Contact**
   Contact: **SAME**      Phone:
   Email:      Website:

4. **STARTING AND ENDING DATES OF LEASE** (also called "Term")
   (A) Starting Date: _____ 6/24/2019 _____ at __3:00__ ☐ a.m. ☒ p.m.
   (B) Ending Date: _____ 6/23/2020 _____ at __11:59__ ☐ a.m. ☒ p.m.
   (C) Tenant is required to vacate the Property on the Ending Date unless the parties have entered into a Renewal Term as described in Paragraph 5.

5. **RENEWAL TERM**
   Unless checked below, this Lease will AUTOMATICALLY RENEW for a Renewal Term of _____ (month-to-month if not specified) at the Ending Date of this Lease or at the end of any Renewal Term unless proper notice is given. Proper notice requires Tenant or Landlord to give at least _____ days (30 if not specified) written notice before Ending Date or before the end of any Renewal Term. Any renewal will be according to the terms of this Lease or any written changes to it.
   ☐ This Lease will TERMINATE on the Ending Date unless extended in writing.

6. **SECURITY DEPOSIT**
   (A) The Security Deposit will be held in escrow by Landlord, unless otherwise stated here _____ at (financial institution): PNC
   Financial institution Address: BETHLEHEM, PA
   (B) When Tenant moves from the Property, Tenant will return all keys and give Landlord written notice of Tenant's new mailing address where Landlord can return the Security Deposit. If Tenant fails to do this, Landlord will not have to provide the list of damages and the remaining security deposit to Tenant as stated in subparagraph (C), below and in the Pennsylvania Landlord and Tenant Act.
   (C) Within 30 Days after Tenant moves from the Property, Landlord will give Tenant a written list of any damage to the Property for which the Landlord claims Tenant is responsible. Any remaining Security Deposit will be returned to Tenant within 30 days after Tenant moves from the Property. **TENANT IS ADVISED THAT FAILURE TO PROVIDE LANDLORD WITH A FORWARDING ADDRESS MAY CAUSE TENANT TO LOSE SOME RIGHTS.**
   (D) Landlord may deduct repair costs and any unpaid Rent and Additional Rent from Tenant's Security Deposit. Tenant may be responsible for any unpaid expenses remaining after Landlord deducts costs from the security deposit.

7. **RENT**
   (A) Rent is due in advance, without demand, on or before the __24th__ day of each month (Due Date).
   (B) The amount of Total Rent due during the Term is: $
   (C) The Rent due each month is: $1,090.00   1190   XCT   XBB
   (D) If Rent is more than __2__ days (5 if not specified) late (Grace Period), Tenant pays a Late Charge of: $10 PER DAY
   (E) All other payments due from Tenant to Landlord, including Late Charges or utility charges, are considered to be Additional Rent. Failure to pay this Additional Rent is a breach of the Lease in the same way as failing to pay the regular Rent.
   (F) Tenant agrees that all payments will be applied against outstanding Additional Rent that is due before they will be applied against the current Rent due. When there is no outstanding Additional Rent, prepayment will be applied to the month's Rent that would be due next.
   (G) Tenant will pay a fee of $50.00 _____ for any payment that is returned or declined by any financial institution for any reason. If payment is returned or declined, the Grace Period does not apply and the Late Charges will be calculated from the Due Date. Any Late Charges will continue to apply until a valid payment is received.

Tenant Initials: _____      RL Page 2 of 7      Landlord Initials: _____

16

*Rent To be Deposited in Brdlords PNC*

(H) Landlord will accept the following methods of payment: ( ☒ Cash) ( ☒ Money Order) ( ☐ Personal Check)
( ☐ Credit Cards) _____ ( ☐ Cashier's Check) ( ☐ Other: _____ )
Landlord can change the acceptable methods of payment if a method fails (check bounces, credit card is declined, etc.).

(I) The first $_____ of Rent due will be made payable to _____ (Broker)
for Landlord, if not specified). The Security Deposit will be made payable to Landlord, or Landlord's representative

(J) The Security Deposit may not be used to pay Rent during the Term or Renewal Term of this Lease.

8. **PAYMENT SCHEDULE**

|  |  | Due Date |  | Paid |  | Due |  |
|---|---|---|---|---|---|---|---|
| (A) | Security Deposit: ~~1090~~ 1190 | 06/23/2019 | $~~1190~~ 1,090.00 | | $ 100 | | C9 |
| (B) | First month's Rent: ~~1090~~ 1190 | 6/23/2019 | $~~1190~~ 1,090.00 | | $ 100 | | |
| (C) | Other: Last months rent | 7/3/2019 | $~~1190~~ 1090 | | $ 1,090.00 | | |
| (D) | Other: _____ | | $ | | $ | | |
| (E) | Other: _____ | | $ | | $ | | |
| | Total Rent and security deposit received to date: | | $ 2,180 ✓ | | $ 1290 | | |
| | Total amount due | | | | $ 1090 | | |

by June 28

9. **USE OF PROPERTY AND AUTHORIZED OCCUPANTS**

(A) Tenant will use the Property as a residence ONLY.

(B) Not more than ___4___ people will live at the Property. List all other occupants who are not listed as Tenants in this Lease.

Name Elyssa Beltran ☒ 18 or older    Name Lucy Carlo ☒ 18 or older

Name Anialyce Ditron ☐ 18 or older    Name Arez Bouie ☐ 18 or older

Guide or support animals: Type _____ Breed _____    Name _____

☐ **Additional information is attached**

10. **POSSESSION**

(A) Tenant may move in (take possession of the Property) on the Starting Date of this Lease.

(B) If Tenant cannot move in within _____ days (0 if not specified) after Starting Date because the previous tenant is still there or because of property damage which makes the Property unsafe, unsanitary, or unfit for human habitation, Tenant's exclusive rights are:

1. Change the Starting Date of the Lease to the day when Property is available. Tenant will not owe or be charged Rent until the Property is available; OR

2. End the Lease and have all money already paid as Rent, Additional Rent or Security Deposit returned, with no further liability on the part of Landlord or Tenant.

11. **LANDLORD'S RIGHT TO ENTER**

(A) Tenant agrees that Landlord or Landlord's representatives may enter the Property at reasonable hours to inspect, repair, or show the Property. Tenant does not have to allow possible tenants or other licensees to enter unless they are with Landlord or Landlord's representative, or they have written permission from the Landlord.

(B) When possible, Landlord will give Tenant _____ hours (24 if not specified) notice of the date, time, and reason for the visit.

(C) In emergencies, Landlord may enter the Property without notice. If Tenant is not present, Landlord will notify Tenant who was there and why within _____ hours (24 if not specified) of the visit. Showing the property is not considered an emergency.

(D) Landlord may put up For Sale or For Rent signs, use lock boxes, and take pictures and video on, in, or near the Property.

12. **RULES AND REGULATIONS**

(A) ☒ Rules and Regulations for use of the Property and common areas are attached.
☐ Homeowners Association or Condominium rules and regulations for the Property are attached.

(B) Any violation of the Rules and Regulations is a breach of this Lease.

(C) Landlord may create or modify the Rules and Regulations if the change benefits the Tenant, is intended to protect the condition or value of the Property, or improves the health, safety, or welfare of others. Landlord agrees to provide all changes to Tenant in writing.

(D) Tenant is responsible for Tenant's family and guests obeying the Rules and Regulations and all laws.

(E) If any fine is imposed on Landlord by the municipality or any other governing body because of the actions of Tenant, or Tenant's family or guests, Tenant will reimburse Landlord or pay the fine. Any unpaid fines will be considered Additional Rent.

13. **PETS**

Tenant will not keep or allow any pets on any part of the Property, unless checked below. Guide and support animals are not pets.

☐ Tenant may keep pets with Landlord's written permission according to the terms of the attached Pet Addendum and/or Rules and Regulations.

14. **CONDITION OF PROPERTY AT MOVE IN**

Tenant has inspected the Property and agrees to accept the Property "as-is," except for the following: _____

_____

Tenant Initials: _EB_    RL Page 3 of 7    Landlord Initials _CT_

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    34640 (mlg)

**15. APPLIANCES INCLUDED**

( ☒ Range/Oven) ( ☒ Cooktop) ( ☐ Refrigerator) ( ☐ Dishwasher) ( ☐ Washer) ( ☐ Dryer) ( ☐ Garbage Disposal)
( ☐ Microwave) ( ☐ Air Conditioning Units – Number: _____ ) ( ☒ Other  washer dryer combination _____ )
Landlord is responsible for repairs to appliances listed above unless otherwise stated here: _____

**16. UTILITIES AND SERVICES**

Landlord and Tenant agree to be responsible for the following utilities and services provided for the Property as marked below, including connection and payment of fees and charges. **If a service is not marked as being the responsibility of Landlord, it is the responsibility of Tenant to pay for that service.** Landlord is not responsible for loss of service if interrupted by circumstances beyond Landlord's control. Tenant will notify Landlord if Tenant receives any notices from utility companies of a pending termination of service.

| Landlord | Tenant | | Landlord | Tenant | |
|---|---|---|---|---|---|
| ☐ | ☐ | Cooking Gas/Fuel | ☐ | ☒ | Air Conditioning |
| ☐ | ☒ | Electricity | ☐ | ☒ | Air Conditioning Maintenance |
| ☐ | ☒ | Cable Satellite Television | ☐ | ☒ | Heat gas _____ (type) |
| ☐ | ☐ | Condominium/Homeowners Association Fee | ☐ | ☒ | Hot Water ELECTRIC _____ (type) |
| ☐ | ☐ | Parking Fee | ☐ | ☒ | Cold Water |
| ☐ | ☒ | Maintenance of Common Areas | ☐ | ☒ | Pest/Rodent Control |
| ☐ | ☒ | Trash Removal | ☐ | ☒ | Bed Bugs Remediation |
| ☐ | ☒ | Recycling Removal | ☐ | ☒ | Snow/Ice Removal |
| ☐ | ☒ | Sewage Fees _____ | ☐ | ☒ | Telephone Service |
| ☒ | ☐ | Sewer Maintenance | ☐ | ☐ | Lawn and Shrubbery Care |
| ☒ | ☐ | Heater Maintenance | ☐ | ☒ | rake parking area divets  if needed |
| ☐ | ☐ | _____ | ☐ | ☐ | _____ |

Comments: _____

**17. TENANT'S CARE OF PROPERTY**

(A)  Tenant will:
1. Keep the Property clean and safe.
2. Dispose of all trash, garbage and any other waste materials as required by Landlord and the law.
3. Use care when using any of the electrical, plumbing, heating, ventilation or other facilities or appliances on the Property, including any elevators.
4. Notify Landlord immediately of any repairs needed and of any potentially harmful health or environmental conditions.
5. Obey all federal, state, and local laws that relate to the Property.
6. Clean up after pets and guide and support animals on the Property, including common areas.

(B)  Tenant will not:
1. Keep any flammable, hazardous or explosive materials on the Property, with the exception of common household goods intended for lawful use.
2. Destroy, damage or deface any part of the Property or common areas.
3. Disturb the peace and quiet of other tenants or neighbors.
4. Cancel or close utility accounts paid by Tenant during the term of the Lease, without the written permission of Landlord.
5. Make changes to the Property, such as painting or remodeling, without the written permission of Landlord. Tenant agrees that any changes or improvements made will belong to Landlord.
6. Perform any maintenance or repairs on the Property unless otherwise stated in the Rules and Regulations, if any.

(C)  Tenant will have breached this Lease and will be responsible for damages if Tenant does not comply with any requirements listed in (A) or (B) above.

(D)  **Tenant is responsible to pay the costs for repairing any damage that is the fault of Tenant, Tenant's family, guests, and/or guide and support animals.**

**18. DETECTORS AND FIRE PROTECTION SYSTEMS**

(A)  Landlord has installed ( ☒ Smoke Detectors) ( ☒ Carbon Monoxide Detectors) ( ☐ Fire extinguishers) in the Property. Tenant will maintain and regularly test detectors to be sure they are in working order, and will replace detector batteries as needed.

(B)  Tenant will immediately notify Landlord, maintenance or emergency contact (See Paragraph 3) of any broken or malfunctioning detectors.

(C)  Failure to properly maintain detectors, replace detector batteries or notify Landlord, maintenance or emergency contact (See Paragraph 3) of any broken or malfunctioning detectors is a breach of this Lease.

(D)  Landlord may provide additional fire protection systems for the benefit of Tenant. Responsibility for maintaining these systems is stated in the Rules and Regulations, if any.

(E)  Tenant will pay for damage to the Property if Tenant fails to maintain or misuses detectors or other fire protection systems.

Tenant Initials: _____            RL Page 4 of 7            Landlord Initials _____

**19. DESTRUCTION OF PROPERTY**

(A) Tenant will notify Landlord, maintenance or emergency contact (See Paragraph 3) immediately if the Property is severely damaged or destroyed by fire or by any other cause. Tenant will immediately notify Landlord, maintenance or emergency contact (See Paragraph 3) of any condition in the Property that could severely damage or destroy the Property.

(B) If Tenant, their family or guests cause damage by fire or by other means, this Lease will remain in effect and Tenant will continue to pay rent, even if Tenant cannot occupy the Property.

(C) If the Property is severely damaged or destroyed for any reason that is not the fault of Tenant:
    1. Tenant may continue to live on the livable part of the Property and pay a reduced rent as agreed to by Tenant and Landlord until the damage is repaired, OR
    2. If the law does not allow Tenant to live on the Property, this Lease is ended.

**20. INSURANCE AND RELEASE**

(A) Tenant understands that Landlord's insurance does not cover Tenant, Tenant's personal property, or Tenant's guests. Tenant is advised to obtain personal property and liability insurance to protect Tenant, Tenant's personal property, and Tenant's guests who may be injured while on the Property.

    ☒ **IF CHECKED**, Tenant must have insurance policies providing at least $ 5,000.00 _____ personal property insurance and $ 100,000.00 _____ liability insurance to protect Tenant, Tenant's personal property and Tenant's guests who may be injured while on the Property. Tenant must maintain this insurance through the entire Term and any Renewal Term. Tenant will provide proof of insurance upon request. Tenant will notify Landlord within 10 days of changes to or cancellation of these policies.

(B) Landlord is not legally responsible for any injury or damage to Tenant, Tenant's family, or Tenant's guests that occurs on the Property.

(C) Tenant is responsible for any loss to Landlord caused by Tenant, Tenant's family or Tenant's guests, including reasonable attorney's fees associated with that loss, if awarded by a court.

**21. HOLDOVER TENANTS**

If Tenant occupies the Property after the Ending Date or end of any Renewal Term, Tenant will be considered a holdover tenant and will be causing Landlord financial harm ("damages"). These damages will be equal to the monthly Rent plus __10__ %, prorated on a daily basis, plus any additional financial costs, including but not limited to eviction costs and reasonable attorney's fees that may be awarded by a court, incurred as a result of the tenant holding over. These damages are separate from and in addition to Landlord's right to seek reimbursement for any physical destruction to the Property caused by Tenant, Tenant's family, or Tenant's guests.

**22. TENANT ENDING LEASE EARLY**

Tenant may **not** end this Lease before the Ending Date of the Lease or any Renewal Term unless otherwise agreed to by the parties in writing.

**23. ABANDONMENT OF PERSONAL PROPERTY**

(A) When the Term, or any Renewal Term, ends, Tenant must remove all of Tenant's personal property from the Property. Any of Tenant's remaining personal property may be considered abandoned if any of the following apply:
    1. Tenant has vacated the Property after termination of the Lease;
    2. An eviction order or order for possession has been entered in favor of Landlord, and Tenant has vacated the Property and removed almost all of Tenant's personal property;
    3. An eviction order or order for possession has been entered in favor of Landlord;
    4. Tenant has vacated the Property, removed almost all of Tenant's personal property and provided Landlord with written notice or a forwarding address; OR
    5. Tenant has vacated the Property without showing an intent to return, Rent is more than 15 days past due and Landlord has posted notice regarding Tenant's rights to Tenant's personal property.

(B) Before Landlord may remove or dispose of Tenant's personal property, Landlord must provide written notice to Tenant. Tenant will have ten days from the date the notice was posted to:
    1. Retrieve Tenant's personal property, OR
    2. Request that Tenant's personal property be stored for up to 30 days. If Tenant requests that Tenant's personal property be stored by Landlord, Tenant understands and agrees that storage will be provided at a location chosen by Landlord, and that Tenant will be responsible for storage costs.

(C) If Tenant dies and leaves personal property in the Property, then this paragraph does not apply. See Paragraph 28, below.

**24. LANDLORD REMEDIES IF TENANT BREACHES LEASE**

(A) If Tenant breaches Lease for any reason, Landlord's remedies may include any or all of the following:
    1. Taking possession of the Property by going to court to evict Tenant.
    2. Filing a lawsuit against Tenant for Rent, damages and Additional Rent, and for Rent and Additional Rent for the rest of the Term or any Renewal Period. If Landlord wins (gets a money judgment against Tenant), Landlord may use the court process to garnish Tenant's wages and take Tenant's personal assets, such as goods, furniture, motor vehicles and money in bank accounts.
    3. Keeping Tenant's Security Deposit to be applied against unpaid Rent or damages, or both.
    4. Tenant paying for Landlord's reasonable attorney's fees and costs, if awarded by a court.

(B) **IF TENANT BREACHES THIS LEASE FOR ANY REASON, TENANT UNDERSTANDS AND AGREES THAT TENANT**

Tenant Initials: _____   RL Page 5 of 7   Landlord Initials: _____

HAS WAIVED OR GIVEN UP TENANT'S RIGHT TO A NOTICE TO MOVE OUT UNLESS A DIFFERENT PERIOD FOR PROVIDING NOTICE IS REQUIRED BY LOCAL ORDINANCE OR IS STATED HERE: _____ ____ ____

**25. TRANSFER AND SUBLEASING**
  (A)  Landlord may transfer this Lease to another landlord. Tenant agrees that this Lease and any written changes to it remains the same with the new Landlord.
  (B)  Tenant may not transfer this Lease or sublease (rent to another person) the Property or any part of the Property without Landlord's written permission.

**26. SALE OF PROPERTY**
  (A)  If Property is sold, Landlord will give Tenant in writing:
    1.  Notice that the Security Deposit and/or prepaid Rent has been transferred to the new landlord.
    2.  The name, address and phone number of the new landlord and where Rent is to be paid, if known.
  (B)  Tenant agrees that Landlord may transfer Tenant's Security Deposit and prepaid Rent to the new landlord.
  (C)  Landlord's responsibilities to Tenant under this Lease end after the Property has been sold and the Lease transferred to a new landlord.

**27. IF GOVERNMENT TAKES PROPERTY**
  (A)  The government or other public authority can take private property for public use. The taking is called condemnation.
  (B)  If any part of the Property is taken by the government, Landlord will reduce Tenant's Rent proportionately. If all the Property is taken or is no longer usable, this Lease will end. Tenant will move out and Landlord will return to Tenant any unused Security Deposit or prepaid Rent.
  (C)  No money paid to Landlord for the condemnation of the Property will belong to Tenant.

**28. DEATH OF TENANT DURING LEASE TERM**
  (A)  If Tenant dies during the Term, or any Renewal Term, of this Lease and Tenant's personal property remains in the Property, the personal property will not be considered abandoned as defined in the Landlord and Tenant Act. When a tenant dies and leaves behind personal property, the treatment of that personal property is governed by Title 20 of the Pennsylvania Consolidated Statues relating to decedents, estates and fiduciaries.
  (B)  If Tenant dies during the Term, or any Renewal Term, of this Lease and Tenant is the sole tenant of the Property. Tenant's representative may terminate this Lease upon 14 days written notice to Landlord. When Tenant's representative terminates this Lease pursuant to this Paragraph, the date of termination will be the last day of the second calendar month that follows the calendar month in which Tenant died or upon surrender of the rental unit and removal of all of Tenant's personal property, whichever occurs later.
  (C)  Tenant's estate will be required to pay Rent, Additional Rent and any other sums due to Landlord, including expenses that Landlord may incur as a direct result of Tenant's death. Tenant's estate is not required to pay any penalty, and is not liable for any damages to landlord for breach of contract or early termination of the Lease.

**29. TENANTS' RIGHTS**
  (A)  Landlord cannot increase rents, decrease services, or threaten to go to court to evict Tenant because Tenant: (1) complains to a government agency or to Landlord about a building or housing code violation; (2) organizes or joins a tenant's organization; or (3) uses Tenant's legal rights in a lawful manner.
  (B)  Landlord or property owner may have a mortgage on the Property. The rights of the mortgage lender come before the rights of the Tenant. For example, if Landlord fails to make mortgage payments, the mortgage lender could take the Property and end this Lease. Landlord will notify Tenant immediately if the property owner or Landlord receive a notice of foreclosure.
TENANT MAY BE WAIVING OR GIVING UP TENANT'S RIGHTS. TENANT UNDERSTANDS THAT IF THERE IS A FORECLOSURE, THE NEW OWNER MAY HAVE THE RIGHT TO END THIS LEASE.

**30. LEAD-BASED PAINT HAZARD DISCLOSURES FOR PROPERTY BUILT BEFORE 1978**
  ☐  Property was built in or after 1978. No Lead-Based Paint Hazards Disclosure is required.
  ☒  Property was built before 1978. **Before signing this Lease, Tenant must receive a separate Lead-Based Paint Hazards Disclosure** disclosing the presence of lead-based paint and lead-based paint hazards on the Property, such as PAR form LPDR, and a federally approved pamphlet on lead poisoning prevention.

**31. PENNSYLVANIA PLAIN LANGUAGE CONSUMER CONTRACT ACT**
The Office of Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms must comply with the Pennsylvania Plain Language Consumer Contract Act.

**32. CAPTIONS**
The headings in this Lease are meant only to make it easier to find the paragraphs.

**33. ENTIRE AGREEMENT**
This Lease is the entire agreement between Landlord and Tenant. No spoken or written agreements made before signing this Lease are a part of this Lease unless they are included in this Lease in writing. No waivers or modifications of this Lease during the Term of this Lease are valid unless in writing signed by both Landlord and Tenant, including modifications made to the Rules and Regulations under Paragraph 12.

Tenant Initials: _____

RL Page 6 of 7

Landlord Initials: _____

**34. SPECIAL CLAUSES**

(A)  The following are part of this Lease if checked:
- ☐ Change of Lease Terms Addendum (PAR Form CLT)
- ☐ Pet Addendum (PAR Form PET)
- ☒ Residential Lead-Based Paint Hazards Disclosure Form for rentals (PAR form LPDR)
- ☐ _____
- ☐ _____

(B)  **Additional Terms:**

Tenants must not remove screens.

Tenants must use air conditioning support bracket on any installed window ac units.

Tenants must not let debris accumulate (including litter from public) and must have it all removed weekly or will be responsible for twice the clean up fee.

At move out tenants will be charged twice the clean up fee at move out for any mess left behind.

House is damage-free except side of kitchen counter.

No smoking indoors or $1,500 fee to repaint walls.

Property must be maintained be reasonably clutter and debris-free.

*Landlord is a PA Licensed Realtor*
*Tenant to reimburse landlord for water/sewer within 10 days of rece...*

**NOTICE BEFORE SIGNING:** If Tenant or Landlord has legal questions, Tenant or Landlord is advised to consult an attorney. If a real estate licensee is involved in the transaction on behalf of either party, by signing below, Landlord and Tenant acknowledge receipt of the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336 and/or §35.337.

By signing below, Landlord and Tenant acknowledge that they have read and understand the notices and explanatory information set forth in this Lease.

A property manager may be acting as an agent for Landlord and may execute this Lease on the Landlord's behalf.

| | | |
|---|---|---|
| TENANT | | DATE 6/24/19 |
| TENANT | | DATE |
| TENANT | DocuSigned by: | DATE |
| CO-SIGNER Richard Martin | | DATE 6/24/2019 |
| CO-SIGNER — 061 3542F90F848D | | DATE |
| CO-SIGNER | | DATE |
| LANDLORD Christine Thierry | | DATE 06/23/2019 |
| LANDLORD | | DATE |

**EXECUTED ON BEHALF OF LANDLORD BY AUTHORIZED BROKER/ASSOCIATE BROKER**

DATE _____

---

## LANDLORD TRANSFERS LEASE TO A NEW LANDLORD

As part of payment received by Landlord, _____ (current Landlord) now transfers to _____ (new landlord) his heirs and estate, this Lease and the right to receive the Rents and other benefits.

| | | |
|---|---|---|
| CURRENT LANDLORD | | DATE |
| CURRENT LANDLORD | | DATE |
| NEW LANDLORD | | DATE |
| NEW LANDLORD | | DATE |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

5160 Camp

## RESIDENTIAL LEAD-BASED PAINT HAZARDS DISCLOSURE FOR RENTALS

LPDR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

### THIS FORM MUST BE COMPLETED FOR ANY PROPERTY BUILT PRIOR TO 1978

1 | PROPERTY 1142 RAILROAD ST BETHLEHEM PA  18015
2 | LANDLORD    CHRISTINE THIERRY

3 | **LEAD WARNING STATEMENT**
4 | Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not
5 | managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing,
6 | landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also
7 | receive a federally approved pamphlet on lead poisoning prevention.

8 | **LANDLORD'S DISCLOSURE - PRESENCE OF LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS**
9 | __X__ / ____    Landlord has no knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the housing.
10 | ____ / ____    Landlord has knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the housing.
11 | Explain: _____
12 |
13 |
14 | **RECORDS AND REPORTS AVAILABLE TO TENANT**
15 | __X__ / ____    Landlord has no records or reports pertaining to lead-based paint and/or lead-based paint hazards in the housing.
16 | __X__ / ____    Landlord has provided Tenant with all available records and reports regarding lead-based paint and/or lead-based paint
17 | hazards in the housing. (List documents): _____
18 |

19 | Landlord certifies that to the best of Landlord's knowledge the above statements are true and accurate.
20 | LANDLORD _____ DATE 6/24/1
21 | LANDLORD _____ DATE _____
22 | LANDLORD _____ DATE _____

23 | TENANT _____
24 | DATE OF LEASE    6.24.19
25 | **TENANT'S ACKNOWLEDGMENT**
26 | ____ / ____    Tenant has received the pamphlet *Protect Your Family from Lead in Your Home* and has read the Lead Warning Statement.
27 | ____ / ____    Tenant has reviewed Landlord's disclosure of known lead-based paint and/or lead-based paint hazards and has received
28 | the records and reports regarding lead-based paint and/or lead-based paint hazards identified above, if any.

29 | Tenant certifies that to the best of Tenant's knowledge the statements contained in Tenant's Acknowledgement are true and
30 | accurate.
31 | TENANT _____ DATE 6/24/19
32 | TENANT _____ DATE _____
33 | TENANT _____ DATE _____

34 | **AGENT ACKNOWLEDGEMENT AND CERTIFICATION**
35 | ____    Agent/Licensee represents that Agent has informed Landlord of Landlord's obligations under the Residential Lead-
36 | Based-Paint Hazard Reduction Act, 42 U.S.C. §4852(d), and is aware of Agent's responsibility to ensure compliance.

37 | The agents have reviewed the information in the Agent Acknowledgement and certify, to the best of their knowledge, that the
38 | information provided is true and accurate. **Landlord Agent and Tenant agent must both sign this form.**

39 | **BROKER FOR LANDLORD (Company Name)** _____
40 | LICENSEE _____ DATE _____

41 | **BROKER FOR TENANT (Company Name)** _____
42 | LICENSEE _____ DATE _____

**Pennsylvania Association of Realtors®**

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev. 9/17, rs1

Howard Hanna The Frederick Group, 3500 Winchester Road, Suite 201 Allentown PA 18104
Phone: 6104104856          Fax: 8886133585          Christine Thierry          5460 Camp Meeting

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Exhibit "B"

# Magisterial District Judge 03-2-11

## DOCKET

Docket Number: MJ-03211-LT-0000446-2019

## Landlord/Tenant Docket

Christine M. Thierry

v.

Elyssa Beltran

Page 1 of 2

### CASE INFORMATION

| | | | |
|---|---|---|---|
| Judge Assigned: | Magisterial District Judge Nicholas E. Englesson | File Date: | 12/11/2019 |
| Claim Amount: | $1,190.00 | Case Status: | Closed |
| Judgment Amount: | $2,646.05 | County: | Northampton |

### CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Recovery of Real Property Hearing | 12/26/2019 | 10:00 am | | Magisterial District Judge Nicholas E. Englesson | Scheduled |

### CASE PARTICIPANTS

| Participant Type | Participant Name | Address |
|---|---|---|
| Defendant | Beltran, Elyssa | Bethlehem, PA 18015 |
| Plaintiff | Thierry, Christine M. | New York, NY 10019 |

### DISPOSITION SUMMARY

| Docket Number | Plaintiff | Defendant | Disposition | Disposition Date |
|---|---|---|---|---|
| MJ-03211-LT-0000446-2019 | Christine M. Thierry | Elyssa Beltran | Judgment for Plaintiff | 12/26/2019 |

### CIVIL DISPOSITION / JUDGMENT DETAILS

Disposition Date: 12/26/2019    Monthly Rent: $1,190.00

| Defendant(s) | Plaintiff(s) | Disposition | Joint/Several Liability | Individual Liability | Net Judgment |
|---|---|---|---|---|---|
| Elyssa Beltran | Christine M. Thierry | Judgment for Plaintiff | $0.00 | $2,646.05 | $2,646.05 |

Judgment Components:

| Type | Amount | Deposit Amount | Adjusted Amount |
|---|---|---|---|
| Rent in Arrears | $2,499.00 | $0.00 | $2,499.00 |
| Costs | $147.05 | $0.00 | $147.05 |

* Is Joint/Several

**Civil Disposition Details:**

| | |
|---|---|
| Grant possession. | Yes |
| Grant possession if money judgment is not satisfied by the time of eviction. | No |

MDJS 1200

Printed: 06/29/2021  12:37 pm

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. You should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.

24

Case 5:21-cv-04421-JMG   Document 1   Filed 05/21/21   Page 28 of 28
Case 5:21-cv-04421-JMG   Document 10   Filed 11/24/21   Page 30 of 58

# Magisterial District Judge 03-2-11

## DOCKET



Docket Number: MJ-03211-LT-0000446-2019

## Landlord/Tenant Docket

Christine M. Thierry
v.
Elyssa Beltran

Page 2 of 2

### DOCKET ENTRY INFORMATION

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 12/27/2019 | Entry of Satisfaction Entered by Plaintiff | Christine M. Thierry | Elyssa Beltran, Defendant |
| 12/26/2019 | Judgment for Plaintiff | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/26/2019 | Judgment Entered | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/12/2019 | Landlord/Tenant Complaint Successfully Served | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/11/2019 | Landlord/Tenant Complaint Issued via Hand Delivery | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/11/2019 | Landlord/Tenant Complaint Filed | Christine M. Thierry | |

MDJS 1200

Page 2 of 2

Printed: 06/29/2021 12.37 pm

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data , errors or omissions on these docket sheets.  You should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.

IN THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY, PENNSYLVANIA

Christine M. Thierry,                      : CIVIL ACTION - LAW
       Plaintiff                        :
       vs.                              :
                        : NO.   C-48-CV-2019-12041
Richard Martin,               :
       Defendant                        :

## N O T I C E

    You have been sued in court.  If you wish to defend against the claims set forth in the

following pages, you must take action within twenty (20) days after this complaint and notice are

served, by entering a written appearance personally or by attorney and filing in writing with the

court your defenses or objections to the claims set forth against you.  You are warned that if you

fail to do so, the case may proceed without you and a judgment may be entered against you by

the court without further notice for any money claimed in the complaint or for any other claim or

relief requested by the plaintiff.  You may lose money or property or other rights important to

you.

      YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO

NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE

OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

NORTHAMPTON COUNTY
LAWYER REFERRAL SERVICE
P.O. BOX 4733
EASTON, PA 18043-4733
TELEPHONE (610) 258-6333



## PLAINTIFF'S FIRST AMENDED COMPLAINT

1.      The amount in controversy, exclusive of interest and costs, exceeds Fifty Thousand Dollars ($50,000.00).

2.      Plaintiff Christine M. Thierry is an adult individual residing at 542 Sagg Main Street #519 Sagaponack, NY 11963.

3.      Defendant Richard Martin is an adult individual residing at 3110 Easthill Dr. Bethlehem, PA 18017.

4.      On or about June 24, 2019, Plaintiff and Defendant entered into a certain Residential Lease ("Lease or Contract"), whereby Defendant cosigned a Lease for a house owned by the Plaintiff and located at 1142 Railroad Street, Northampton County, Bethlehem Pennsylvania 18015, more fully described in the Lease ("Premises"). A true and correct copy of the Lease is attached hereto as Exhibit "B" and incorporated herein by reference.

5.      Elyssa Beltran is the "Tenant" on the Lease.

6.      Richard Martin is the "CoSigner" on the Lease.

7.      Ms. Beltran was living with Richard Martin before she became tenant to plaintiff.

8.      Ms. Beltran provided to plaintiff's property manager Richard Martin's address as her new address after moving out of the premises.

9.      Richard Martin paid the rent for the premises.

10.     Richard Martin paid the utilities for the premises.

11.     Richard Martin scheduled landlord inspections with landlord for the premises.

12.     Richard Martin scheduled real estate showings for the premises.

13.     Richard Martin granted access to the premises.

14.     Mr. Martin was at premises for landlord inspections.

15.     Richard Martin was responsible for the care of the premises.

16.     Richard Martin was financially responsible for the lease and all its terms.

17.     Ms. Beltran was under Mr. Martin's financial care during the term of the lease.

18.     Ms. Beltran was under Mr. Martin's emotional care during the term of the lease.

19.     Ms. Beltran was could not or would not care for herself as an adult during the term of the lease.

20.     The parties had an agreement that Mr. Martin was to be contacted for any issues including damages, rent, fees regarding the lease and/or premises.

21.     Ms. Beltran and Mr. Martin used the premises for illicit activities.

22.      Ms. Beltran and Mr. Martin used the premises for illegal activities.

23.     Mr. Martin was charged with criminal harassment of plaintiff.

24.     Mr. Martin intentionally allowed the premises to be severely damaged.

25.     Mr. Martin intentionally interfered with plaintiff's business.

26.     Mr. Martin committed assault and battery against plaintiff.

27.     On December 18, 2019, Plaintiff filed a complaint C-48CV2019-12041 with the Court of Common Pleas Northampton County

28.     On June 25, 2021, defendant filed answer to original complaint referenced in #27.

29.     Plaintiff is amending a complaint due to changed facts since the original complaint.

30.     The lease required "Rent" to be paid the 24th of each month in the sum of $1,190.

31.     The lease allowed for a 2-day grace period for any fees that are due before late fees are charged of $10 per day at line 48.

32.     The lease states, "all other payments due...are considered Additional Rent. Failure to pay Additional Rent is a breach of lease..." Lines 49-50.

33.     The lease states, "all payments will be applied against outstanding Additional Rent that is due before they will be applied against the current rent due." Lines 51-52.

34.     District Magistrate granted plaintiff the right to end lease early in addition to awarding plaintiff monetary damages of $2,646.05 on December 26, 2020, due to multiple violations of lease including damages and failure to pay.  A true and correct copy is attached as Exhibit "C".

35.     The parties agreed to stop violating lease including removing hazardous debris and garbage amassed on the exterior of the premises, and signed an addendum on December 26, 2019, after the hearing referenced above in Line 34.

36.     Plaintiff honored her responsibilities of the agreement in line 35 and did not have sheriff provide eviction services, a right which she was awarded at the Magistrate Court.

37.     The defendant immediately breached the agreement noted line 35.

38.     The defendant owes monies per lease and has refused to pay it.

39.     The contract has been breached.

40.     At expense to plaintiff, a collection company was hired to collect amount owed from plaintiff as it was accruing at $10 per day late fee per the lease.

41.     The defendant acknowledged receipt of the bills, but did not pay any bills from the collection company.

42.     At expense to plaintiff, a property manager was then hired to resolve the lease violations and collect monies owed from plaintiff which was accruing at $10 per day per the lease.

43.     The defendant did not pay bills from the property management company.

44.     The collection company and property manager were unsuccessful in collecting monies owed to plaintiff.

45.     In accordance with the lease *all payments [from defendant] were applied against outstanding Additional Rent that is due before they were applied against the current rent.*

46.     The Defendant has been made aware rent, fees and costs are past due.

47.     Defendant was made aware of multiple lease violations.

48.     Defendant was made aware of accruing fees.

49.     Defendant refused to comply or correct violations.

50.     Defendant directly contributed to damages owed to plaintiff.

51.     Defendant has firsthand knowledge of the Premises.

52.     The lease on lines 4-7 states defendant "is individually responsible for all obligations of the Lease, including Rent, late fees, damages, and other costs."

53.     Defendant was made aware late fees are accruing in accordance with lease.

54.     Defendant is aware property has been damaged.

55.     Defendant is aware the payments he made were applied to late fees and property damage, not the rent, in accordance with lease.

56.     Defendant did not pay for the rent during the last several months of the lease.

57.     Defendant has failed to mitigate damages.

58.     Defendant is liable to plaintiff for all costs and expenses not paid on lease in accordance with lease.

59.     Defendant willfully and negligently continues to deny plaintiff compensation he agreed to in lease and;

60.     As a direct result of the actions of the Defendant failing to honor the contract in denying Plaintiff legally required rent and fees, Plaintiffs have been damaged as follows:

> a.      Collection, property management and administrative fees in the amount of Five Thousand Dollars ($5,000.00);
>
> b.      Loss of use of property in the amount of Nine Thousand Dollars ($9,000.00);
>
> c.      Repairs and restore the Premises in the amount of Twenty-One Thousand Five Hundred Dollars ($21,500.00);
>
> d.      Accruing late fees;
>
> e.      Legal fees of Two Thousand Dollars ($2,000);
>
> f.      Other fees to be decided at trial including requested punitive damages;

## COUNT I - BREACH OF CONTRACT

61.     Paragraphs 1 through 60 are incorporated herein by reference in their entirety.

62.     Plaintiff fully complied with all the terms and conditions of the Lease.

63.     As a direct result of the Defendants' and tenant's material breach of the Lease,

Plaintiffs sustained the itemized damages set forth in Paragraph 60 above, which is incorporated

herein by reference in its entirety.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor,

and against Defendant.

## COUNT II - FRAUDULENT MISREPRESENTATION

64.     Paragraphs 1 through 63 are incorporated herein by reference in their entirety.

65.     On behalf of the Plaintiff, Defendant Richard Martin fraudulently misrepresented

to the tenant that tenant need to comply with lease.

66.     The fraudulent misrepresentation set forth in Paragraphs 65 above was material to

the transaction in question, and was made with knowledge that it was false, or with recklessness

as to whether it was true or false.

67.     Further, the fraudulent misrepresentation set forth in Paragraphs 65-66 above was

done so with the intent of misleading the tenants to continue to damage Plaintiff by relying on

the misrepresentations.

68.     Being that the tenant refused communication or to allow access to property unless

defendant instructed her to do so, and the defendant instructed all communications were to be

routed through him, tenant relied on the fraudulent misrepresentation made to her by Defendant Richard Martin.

69.     As a direct result of tenant's reliance on the fraudulent misrepresentation made by the Defendant, Plaintiffs sustained the itemized damages set forth in Paragraph 60 above, which is incorporated herein by reference in its entirety.

70.     Defendants' conduct in making the fraudulent misrepresentation set forth in Paragraphs 65-66 above was willful, wanton and outrageous, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant, plus punitive damages, interest and costs.

## COUNT III - NEGLIGENT MISREPRESENTATION

71.     Paragraphs 1 through 70 are incorporated herein by reference in their entirety.

72.     In the alternative, Defendant Richard Martin negligently misrepresented to the tenant that they did not need to pay their rent.

73.     The defendant Martin negligently misrepresented to the tenant that they did not need to comply with lease.

74.     The negligent misrepresentation set forth in Paragraphs 72-73 above made by Defendant was material to the transactions in question.

75.   Defendant Richard Martin made the negligent misrepresentation to tenant set forth in Paragraphs 72-73 above without knowledge of its truth or falsity, or in the alternative, should have known that said misrepresentation was false.

76.   Defendant made the negligent misrepresentation to tenant set forth in Paragraphs 72-73 above with the intent to induce the tenant to rely on said misrepresentation, and to continue to violate contract.

77.   Being that the tenant would only take calls from the Defendant, not the Plaintiff, tenant relied upon the negligent misrepresentation made to them by Defendants to not comply with the contract.

78.   As a direct result of tenant's reliance on the negligent misrepresentation made to her by Defendant, as more fully set forth in Paragraphs 71-74 above, Plaintiffs sustained the itemized damages set forth in Paragraph 60 above, which is incorporated herein by reference in its entirety.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.

## COUNT IV - INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL/BUSINESS RELATIONS

79.   Paragraphs 1 through 78 are incorporated herein by reference in their entirety.

80.   In acting as a landlord, Plaintiff enters contractual relationships with tenants, and the Plaintiff seeks to find tenants who honor contractual relationships.

81.     Further, given the state of the property which was 95% gut renovated and new at the time Defendants cosigned the lease and entered into contract with Plaintiff, numerous damages have occurred in violation of contract that will required loss of rents, loss of sales, carrying costs, significant construction, loss of showings, and loss of customers to repair.

82.     The purpose of the Defendants' unlawful actions was to interfere with the existing contractual relationship of the Plaintiffs and her tenant, and to prevent the prospective contractual relationships of the Plaintiffs and her new tenants or buyers from occurring.

83.     The Defendants' unlawful actions against the Plaintiffs were taken without privilege or justification.

84.     As a direct result of the Defendants' unlawful actions in causing tenant Elyssa Beltran to keep possession of, and continue to damage Premises, Plaintiffs sustained the itemized damages set forth in Paragraph 60 above, which is incorporated herein by reference in its entirety.

85.     Defendants' unlawful conduct in was willful, wanton and outrageous, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.

## COUNT V - CIVIL CONSPIRACY

86.     Paragraphs 1 through 85 are incorporated herein by reference in their entirety.

87.     Plaintiff believes, and therefore aver, that the Defendant acted in concert when Defendant's actions to have tenant keep possession of, allow further damage to premises, and deny Plaintiffs from rights to her Premises were unlawful on multiple occasions.

88.     Plaintiff believes, and therefore aver, that Defendant took those unlawful actions on multiple occasion with malice aforethought and intended to injure the Plaintiff by preventing her possession and full access to the Premises, and therefore, the operation of her business.

89.     One occasion was on June 7, 2020, when Defendant acted in concert with others when defendant assaulted, committed battery, harassed plaintiff, and also denied plaintiff from rights to her premises.  These actions were all unlawful.

90.     As a direct result of the Defendants' unlawful actions, Plaintiffs sustained the itemized damages set forth in Paragraph 60 above, which is incorporated herein by reference in its entirety.

91.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiffs, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

### COUNT VI – ASSAULT

92.     Paragraphs 1 through 91 are incorporated herein by reference in their entirety.

93.     On June 7, 2020, Defendant assaulted plaintiff.

94.     The defendant intentionally and maliciously caused harm to plaintiff.

95.     The defendant chased plaintiff then shoved her when she reached a closed exit door, then informed her he was spitting COVID into plaintiff's face.

96.     The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

97.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiffs to punitive damages.

98.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiffs, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## COUNT VII – BATTERY

99.     Paragraphs 1 through 98 are incorporated herein by reference in their entirety.

100.    On June 7, 2020 Defendant committed battery against plaintiff.

101.    The defendant intentionally and maliciously caused harm to plaintiff.

102.    The defendant chased plaintiff then shoved her when she reached a closed exit door, then informed her he was spitting COVID-19 into plaintiff's face.

103.    After the police left the premises after charging defendant with harassment, the defendant continued to harass plaintiff at the premises putting her in fear for her life.

104.   The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

105.   Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## COUNT VIII – HARASSMENT

106.   Paragraphs 1 through 105 are incorporated herein by reference in their entirety.

107.   On June 7, 2020 Defendant harassed plaintiff.

108.   The defendant intentionally and maliciously caused harm to plaintiff.

109.   The defendant chased plaintiff and shoved her, then informed her he was spitting COVID-19 into plaintiff's face.

110.   After the police left the premises after charging defendant with criminal harassment, the defendant continued to harass plaintiff at the premises putting her in fear for her life.

111.   The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

112.   Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.


Respectfully submitted,

CHRISTINE M. THIERRY


By:_____

CHRISTINE M. THIERRY


542 Sagg Main St #519
Sagaponack, NY 11962
(610) 310-4856

Exhibit "B"

# RESIDENTIAL LEASE

This form recommended and approved for, but not restricted in use by, the members of the Pennsylvania Association of Realtors® (PAR).

RL

## PARTIES

| | |
|---|---|
| TENANT(S): Elyssa Beltran | LANDLORD(S): Christine M Thierry |
| TENANT'S MAILING ADDRESS:<br>3110 Easthills Dr Bethlehem PA 18017 | LANDLORD'S MAILING ADDRESS:<br>414 W 49th St Apt 1D<br>NY, NY 10019 |

## PROPERTY

Property Address        1142 Railroad St

Unit _____ ZIP   18015

in the municipality of     Bethlehem     , County of     Northampton

in the School District of     Bethlehem     , in the Commonwealth of Pennsylvania.

## TENANT'S RELATIONSHIP WITH PA LICENSED BROKER

☒ **No Business Relationship (Tenant is not represented by a broker)**

| | |
|---|---|
| Broker (Company) _____ | Licensee(s) (Name) _____ |
| Company License # _____<br>Company Address _____ | State License # _____<br>Direct Phone(s) _____<br>Cell Phone(s) _____ |
| Company Phone _____<br>Company Fax _____ | Fax _____<br>Email _____ |
| Broker is:<br>☐ Tenant Agent (Broker represents Tenant only)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) | Licensee(s) is:<br>☐ Tenant Agent (all company licensees represent Tenant)<br>☐ Tenant Agent with Designated Agency (only licensee(s) named above represent Tenant)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Tenant)

## LANDLORD'S RELATIONSHIP WITH PA LICENSED BROKER

☒ **No Business Relationship (Landlord is not represented by a broker)**

| | |
|---|---|
| Broker (Company) _____ | Licensee(s) (Name) _____ |
| Company License # _____<br>Company Address _____ | State License # _____<br>Direct Phone(s) _____<br>Cell Phone(s) _____ |
| Company Phone _____<br>Company Fax _____ | Fax _____<br>Email _____ |
| Broker is:<br>☐ Landlord Agent (Broker represents Landlord only)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) | Licensee(s) is:<br>☐ Landlord Agent (all company licensees represent Landlord)<br>☐ Landlord Agent with Designated Agency (only licensee(s) named above represent Landlord)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Landlord)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Tenant and Landlord in the same transaction. A Licensee is a Dual Agent when a Licensee represents Tenant and Landlord in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Tenant and Landlord. If the same Licensee is designated for Tenant and Landlord, the Licensee is a Dual Agent.

**By signing this Agreement, Tenant and Landlord each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

Tenant Initials: _EB_       RL, Page 1 of 7       Landlord Initials: ____ / ____

**THIS FORM SHOULD NOT BE USED FOR THE LEASE OF A MANUFACTURED HOME**

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev 9/17 rel 1.18

Howard Hanna The Frederick Group, 3500 Winchester Road, Suite 201 Allentown PA 18104    Phone: 6103104856    Fax 8886133585    Sales Camp Montme
Christine Thierry    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

1. **LEASE DATE AND RESPONSIBILITIES**
   This Lease for the Property, dated _____ June 24, 2019 _____, is between the Landlord and Tenant. Each Tenant is individu-ally responsible for all of the obligations of this Lease, including Rent, fees, damages and other costs.

2. **CO-SIGNERS**
   Co-signers: Richard Martin 3110 Easthills Dr Bethlehem PA 18017

   Each Co-signer is individually responsible for all obligations of this Lease, including Rent, late fees, damages and other costs. Co-signers do not have the right to occupy the Property as a tenant without the Landlord's prior written permission.

3. **PROPERTY CONTACT INFORMATION**
   **Rental Payments** (see Paragraph 7(H) for additional information)
   Payable to: Christine M Thierry                    Phone: (610) 310-4856
   Address: 414 W 49th St Apt 1D NY, NY 10019
   **Maintenance Requests**
   Contact: SAME                                      Phone: (610) 310-4856
   Address: 414 W 49th St Apt 1D NY, NY 10019
   Email: ct1869@gmail.com                            Website:
   **Emergency Maintenance Contact**
   Contact: SAME                                      Phone:
   Email:                                             Website:

4. **STARTING AND ENDING DATES OF LEASE** (also called "Term")
   (A) **Starting Date:** 6/24/2019 _____ , at 3:00 ☐ a.m. ☒ p.m.
   (B) **Ending Date:** 6/23/2020 _____ , at 11:59 ☐ a.m. ☒ p.m.
   (C) Tenant is required to vacate the Property on the Ending Date unless the parties have entered into a Renewal Term as described in Paragraph 5.

5. **RENEWAL TERM**
   Unless checked below, this Lease will AUTOMATICALLY RENEW for a Renewal Term of _____ (month-to-month if not specified) at the Ending Date of this Lease or at the end of any Renewal Term unless proper notice is given. Proper notice requires Tenant or Landlord to give at least _____ days (30 if not specified) written notice before Ending Date or before the end of any Renewal Term. Any renewal will be according to the terms of this Lease or any written changes to it.
   ☐ This Lease will TERMINATE on the Ending Date unless extended in writing.

6. **SECURITY DEPOSIT**
   (A) The Security Deposit will be held in escrow by Landlord, unless otherwise stated here _____ at (financial institution): PNC
       Financial institution Address: BETHLEHEM, PA
   (B) When Tenant moves from the Property, Tenant will return all keys and give Landlord written notice of Tenant's new mailing address where Landlord can return the Security Deposit. If Tenant fails to do this, Landlord will not have to provide the list of damages and the remaining security deposit to Tenant as stated in subparagraph (C), below and in the Pennsylvania Landlord and Tenant Act.
   (C) Within 30 Days after Tenant moves from the Property, Landlord will give Tenant a written list of any damage to the Property for which the Landlord claims Tenant is responsible. Any remaining Security Deposit will be returned to Tenant within 30 days after Tenant moves from the Property. **TENANT IS ADVISED THAT FAILURE TO PROVIDE LANDLORD WITH A FOR-WARDING ADDRESS MAY CAUSE TENANT TO LOSE SOME RIGHTS.**
   (D) Landlord may deduct repair costs and any unpaid Rent and Additional Rent from Tenant's Security Deposit. Tenant may be responsible for any unpaid expenses remaining after Landlord deducts costs from the security deposit.

7. **RENT**
   (A) Rent is due in advance, without demand, on or before the 24th day of each month (Due Date).
   (B) The amount of Total Rent due during the Term is: $
   (C) The Rent due each month is: $1,090.00  1190  x CT  x BB
   (D) If Rent is more than 2 days (5 if not specified) late (Grace Period), Tenant pays a Late Charge of: $10 PER DAY
   (E) All other payments due from Tenant to Landlord, including Late Charges or utility charges, are considered to be Additional Rent. Failure to pay this Additional Rent is a breach of the Lease in the same way as failing to pay the regular Rent.
   (F) Tenant agrees that all payments will be applied against outstanding Additional Rent that is due before they will be applied against the current Rent due. When there is no outstanding Additional Rent, prepayment will be applied to the month's Rent that would be due next.
   (G) Tenant will pay a fee of $50.00 _____ for any payment that is returned or declined by any financial institution for any reason. If payment is returned or declined, the Grace Period does not apply and the Late Charges will be calculated from the Due Date. Any Late Charges will continue to apply until a valid payment is received.

Tenant Initials: BB /_____          RL Page 2 of 7          Landlord Initials: ___ /_____

(H) Landlord will accept the following methods of payment: ( ☒ Cash) ( ☒ Money Order ) ( ☐ Personal Check)
( ☐ Credit Cards) _____ ( ☐ Cashier's Check) ( ☐ Other: _____ )
Landlord can change the acceptable methods of payment if a method fails (check bounces, credit card is declined, etc.).

(I) The first $ _____ of Rent due will be made payable to _____ (Broker
for Landlord, if not specified). The Security Deposit will be made payable to Landlord, or Landlord's representative.

(J) The Security Deposit may not be used to pay Rent during the Term or Renewal Term of this Lease.

8.  **PAYMENT SCHEDULE**

| | | Due Date | Paid | Due |
|---|---|---|---|---|
| (A) | Security Deposit: ~~1090~~ 1190 | 06/23/2019 | $ ~~1,090.00~~ 1190 1090 | $ 100 |
| (B) | First month's Rent: ~~1090~~ 1190 | 6/23/2019 | $ ~~1,090.00~~ 1190 | $ 100 |
| (C) | Other: Last months rent | 7/3/2019 | $ 1090 | $ 1,090.00 |
| (D) | Other: _____ | | $ | $ |
| (E) | Other: _____ | | $ | $ |
| | Total Rent and security deposit received to date: | | $ | $ 1290 |
| | Total amount due | | $ 2,180 ✓ | 1090 by June 28, 20 |

9.  **USE OF PROPERTY AND AUTHORIZED OCCUPANTS**
(A) Tenant will use the Property as a residence ONLY.
(B) Not more than ___4___ people will live at the Property. List all other occupants who are not listed as Tenants in this Lease:

| Name | Elyssa Beltran | ☒ 18 or older | Name | Lucy Carlo | ☒ 18 or older |
|---|---|---|---|---|---|
| Name | Anialyce Ditron | ☐ 18 or older | Name | Arez Bouie | ☐ 18 or older |
| Guide or support animals: Type _____ | | Breed _____ | Name | | |

☐ Additional information is attached

10. **POSSESSION**
(A) Tenant may move in (take possession of the Property) on the Starting Date of this Lease.
(B) If Tenant cannot move in within _____ days (0 if not specified) after Starting Date because the previous tenant is still there or because of property damage which makes the Property unsafe, unsanitary, or unfit for human habitation, Tenant's exclusive rights are to:
    1.  Change the Starting Date of the Lease to the day when Property is available. Tenant will not owe or be charged Rent until the Property is available; OR
    2.  End the Lease and have all money already paid as Rent, Additional Rent or Security Deposit returned, with no further liability on the part of Landlord or Tenant.

11. **LANDLORD'S RIGHT TO ENTER**
(A) Tenant agrees that Landlord or Landlord's representatives may enter the Property at reasonable hours to inspect, repair, or show the Property. Tenant does not have to allow possible tenants or other licensees to enter unless they are with Landlord or Landlord's representative, or they have written permission from the Landlord.
(B) When possible, Landlord will give Tenant _____ hours (24 if not specified) notice of the date, time, and reason for the visit.
(C) In emergencies, Landlord may enter the Property without notice. If Tenant is not present, Landlord will notify Tenant who was there and why within _____ hours (24 if not specified) of the visit. Showing the property is not considered an emergency.
(D) Landlord may put up For Sale or For Rent signs, use lock boxes, and take pictures and video on, in, or near the Property.

12. **RULES AND REGULATIONS**
(A) ☒ Rules and Regulations for use of the Property and common areas are attached.
    ☐ Homeowners Association or Condominium rules and regulations for the Property are attached.
(B) Any violation of the Rules and Regulations is a breach of this Lease.
(C) Landlord may create or modify the Rules and Regulations if the change benefits the Tenant, is intended to protect the condition or value of the Property, or improves the health, safety, or welfare of others. Landlord agrees to provide all changes to Tenant in writing.
(D) Tenant is responsible for Tenant's family and guests obeying the Rules and Regulations and all laws.
(E) If any fine is imposed on Landlord by the municipality or any other governing body because of the actions of Tenant, or Tenant's family or guests, Tenant will reimburse Landlord or pay the fine. Any unpaid fines will be considered Additional Rent.

13. **PETS**
Tenant will not keep or allow any pets on any part of the Property, unless checked below. Guide and support animals are not pets.
☐ Tenant may keep pets with Landlord's written permission according to the terms of the attached Pet Addendum and/or Rules and Regulations.

14. **CONDITION OF PROPERTY AT MOVE IN**
Tenant has inspected the Property and agrees to accept the Property "as-is," except for the following: _____
_____

Tenant Initials: _____     RL Page 3 of 7     Landlord Initials _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    5460 Camp

**15. APPLIANCES INCLUDED**

( ☒ Range/Oven)   ( ☒ Cooktop)   ( ☐ Refrigerator)   ( ☐ Dishwasher)   ( ☐ Washer)   ( ☐ Dryer)   ( ☐ Garbage Disposal)
( ☐ Microwave)   ( ☐ Air Conditioning Units - Number: _____ )   ( ☒ Other  washer dryer combination _____ )
Landlord is responsible for repairs to appliances listed above unless otherwise stated here:

_____
_____

**16. UTILITIES AND SERVICES**

Landlord and Tenant agree to be responsible for the following utilities and services provided for the Property as marked below, including connection and payment of fees and charges. **If a service is not marked as being the responsibility of Landlord, it is the responsibility of Tenant to pay for that service.** Landlord is not responsible for loss of service if interrupted by circumstances beyond Landlord's control. Tenant will notify Landlord if Tenant receives any notices from utility companies of a pending termination of service.

| Landlord | Tenant | | Landlord | Tenant | |
|---|---|---|---|---|---|
| ☐ | ☐ | Cooking Gas/Fuel | ☐ | ☒ | Air Conditioning |
| ☐ | ☒ | Electricity | ☐ | ☒ | Air Conditioning Maintenance |
| ☐ | ☒ | Cable/Satellite Television | ☐ | ☒ | Heat  gas                          (type) |
| ☐ | ☐ | Condominium/Homeowners Association Fee | ☐ | ☒ | Hot Water  ELECTRIC              (type) |
| ☐ | ☐ | Parking Fee | ☐ | ☒ | Cold Water |
| ☐ | ☒ | Maintenance of Common Areas | ☐ | ☒ | Pest/Rodent Control |
| ☐ | ☒ | Trash Removal | ☐ | ☒ | Bed Bugs Remediation |
| ☐ | ☒ | Recycling Removal | ☐ | ☒ | Snow/Ice Removal |
| ☐ | ☒ | Sewage Fees _____ | ☐ | ☒ | Telephone Service |
| ☒ | ☐ | Sewer Maintenance | ☐ | ☐ | Lawn and Shrubbery Care |
| ☒ | ☐ | Heater Maintenance | ☐ | ☒ | rake parking area divets  if needed |
| ☐ | ☐ | | ☐ | ☐ | |

Comments: _____

**17. TENANT'S CARE OF PROPERTY**

(A)   Tenant will:
   1.   Keep the Property clean and safe.
   2.   Dispose of all trash, garbage and any other waste materials as required by Landlord and the law.
   3.   Use care when using any of the electrical, plumbing, heating, ventilation or other facilities or appliances on the Property, including any elevators.
   4.   Notify Landlord immediately of any repairs needed and of any potentially harmful health or environmental conditions.
   5.   Obey all federal, state, and local laws that relate to the Property.
   6.   Clean up after pets and guide and support animals on the Property, including common areas.
(B)   Tenant will not:
   1.   Keep any flammable, hazardous or explosive materials on the Property, with the exception of common household goods intended for lawful use.
   2.   Destroy, damage or deface any part of the Property or common areas.
   3.   Disturb the peace and quiet of other tenants or neighbors.
   4.   Cancel or close utility accounts paid by Tenant during the term of the Lease, without the written permission of Landlord.
   5.   Make changes to the Property, such as painting or remodeling, without the written permission of Landlord. Tenant agrees that any changes or improvements made will belong to Landlord.
   6.   Perform any maintenance or repairs on the Property unless otherwise stated in the Rules and Regulations, if any.
(C)   Tenant will have breached this Lease and will be responsible for damages if Tenant does not comply with any requirements listed in (A) or (B), above.
(D)   **Tenant is responsible to pay the costs for repairing any damage that is the fault of Tenant, Tenant's family, guests, and/or guide and support animals.**

**18. DETECTORS AND FIRE PROTECTION SYSTEMS**

(A)   Landlord has installed ( ☒ Smoke Detectors)   ( ☒ Carbon Monoxide Detectors)   ( ☐ fire extinguishers) in the Property. Tenant will maintain and regularly test detectors to be sure they are in working order, and will replace detector batteries as needed.
(B)   Tenant will immediately notify Landlord, maintenance or emergency contact (See Paragraph 3) of any broken or malfunctioning detectors.
(C)   Failure to properly maintain detectors, replace detector batteries or notify Landlord, maintenance or emergency contact (See Paragraph 3) of any broken or malfunctioning detectors is a breach of this Lease.
(D)   Landlord may provide additional fire protection systems for the benefit of Tenant. Responsibility for maintaining these systems is stated in the Rules and Regulations, if any.
(E)   Tenant will pay for damage to the Property if Tenant fails to maintain or misuses detectors or other fire protection systems.

Tenant Initials: _____ / _____            RL Page 4 of 7            Landlord Initials: _____ / _____

**19. DESTRUCTION OF PROPERTY**

(A) Tenant will notify Landlord, maintenance or emergency contact (See Paragraph 3) immediately if the Property is severely damaged or destroyed by fire or by any other cause. Tenant will immediately notify Landlord, maintenance or emergency contact (See Paragraph 3) of any condition in the Property that could severely damage or destroy the Property.

(B) If Tenant, their family or guests cause damage by fire or by other means, this Lease will remain in effect and Tenant will continue to pay rent, even if Tenant cannot occupy the Property.

(C) If the Property is severely damaged or destroyed for any reason that is not the fault of Tenant:

   1. Tenant may continue to live on the livable part of the Property and pay a reduced rent as agreed to by Tenant and Landlord until the damage is repaired. OR

   2. If the law does not allow Tenant to live on the Property, this Lease is ended.

**20. INSURANCE AND RELEASE**

(A) Tenant understands that Landlord's insurance does not cover Tenant, Tenant's personal property, or Tenant's guests. Tenant is advised to obtain personal property and liability insurance to protect Tenant, Tenant's personal property, and Tenant's guests who may be injured while on the Property.

   ☒ **IF CHECKED**, Tenant must have insurance policies providing at least $ 5,000.00 _____ personal property insurance and $ 100,000.00 _____ liability insurance to protect Tenant, Tenant's personal property and Tenant's guests who may be injured while on the Property. Tenant must maintain this insurance through the entire Term and any Renewal Term. Tenant will provide proof of insurance upon request. Tenant will notify Landlord within 10 days of changes to or cancellation of these policies.

(B) Landlord is not legally responsible for any injury or damage to Tenant, Tenant's family, or Tenant's guests that occurs on the Property.

(C) Tenant is responsible for any loss to Landlord caused by Tenant, Tenant's family or Tenant's guests, including reasonable attorney's fees associated with that loss, if awarded by a court.

**21. HOLDOVER TENANTS**

If Tenant occupies the Property after the Ending Date or end of any Renewal Term, Tenant will be considered a holdover tenant and will be causing Landlord financial harm ("damages"). These damages will be equal to the monthly Rent plus __10__ %, prorated on a daily basis, plus any additional financial costs, including but not limited to eviction costs and reasonable attorney's fees that may be awarded by a court, incurred as a result of the tenant holding over. These damages are separate from and in addition to Landlord's right to seek reimbursement for any physical destruction to the Property caused by Tenant, Tenant's family, or Tenant's guests.

**22. TENANT ENDING LEASE EARLY**

Tenant may **not** end this Lease before the Ending Date of the Lease or any Renewal Term unless otherwise agreed to by the parties in writing.

**23. ABANDONMENT OF PERSONAL PROPERTY**

(A) When the Term, or any Renewal Term, ends, Tenant must remove all of Tenant's personal property from the Property. Any of Tenant's remaining personal property may be considered abandoned if any of the following apply:

   1. Tenant has vacated the Property after termination of the Lease;

   2. An eviction order or order for possession has been entered in favor of Landlord, and Tenant has vacated the Property and removed almost all of Tenant's personal property;

   3. An eviction order or order for possession has been entered in favor of Landlord;

   4. Tenant has vacated the Property, removed almost all of Tenant's personal property and provided Landlord with written notice of a forwarding address; OR

   5. Tenant has vacated the Property without showing an intent to return. Rent is more than 15 days past due and Landlord has posted notice regarding Tenant's rights to Tenant's personal property.

(B) Before Landlord may remove or dispose of Tenant's personal property, Landlord must provide written notice to Tenant. Tenant will have ten days from the date the notice was postmarked to:

   1. Retrieve Tenant's personal property, OR

   2. Request that Tenant's personal property be stored for up to 30 days. If Tenant requests that Tenant's personal property be stored by Landlord, Tenant understands and agrees that storage will be provided at a location chosen by Landlord, and that Tenant will be responsible for storage costs.

(C) If Tenant dies and leaves personal property in the Property, then this paragraph does not apply. See Paragraph 28, below.

**24. LANDLORD REMEDIES IF TENANT BREACHES LEASE**

(A) If Tenant breaches Lease for any reason, Landlord's remedies may include any or all of the following:

   1. Taking possession of the Property by going to court to evict Tenant.

   2. Filing a lawsuit against Tenant for Rent, damages and Additional Rent, and for Rent and Additional Rent for the rest of the Term or any Renewal Period. If Landlord wins (gets a money judgment against Tenant), Landlord may use the court process to garnish Tenant's wages and take Tenant's personal assets, such as goods, furniture, motor vehicles and money in bank accounts.

   3. Keeping Tenant's Security Deposit to be applied against unpaid Rent or damages, or both.

   4. Tenant paying for Landlord's reasonable attorney's fees and costs, if awarded by a court.

(B) **IF TENANT BREACHES THIS LEASE FOR ANY REASON, TENANT UNDERSTANDS AND AGREES THAT TENANT**

Tenant Initials: _____

RL Page 5 of 7

Landlord Initials: _____

HAS WAIVED OR GIVEN UP TENANT'S RIGHT TO A NOTICE TO MOVE OUT UNLESS A DIFFERENT PERIOD FOR PROVIDING NOTICE IS REQUIRED BY LOCAL ORDINANCE OR IS STATED HERE: _____

**25. TRANSFER AND SUBLEASING**

(A) Landlord may transfer this Lease to another landlord. Tenant agrees that this Lease and any written changes to it remains the same with the new Landlord.

(B) Tenant may not transfer this Lease or sublease (rent to another person) the Property or any part of the Property without Landlord's written permission.

**26. SALE OF PROPERTY**

(A) If Property is sold, Landlord will give Tenant in writing:
1. Notice that the Security Deposit and/or prepaid Rent has been transferred to the new landlord.
2. The name, address and phone number of the new landlord and where Rent is to be paid, if known.

(B) Tenant agrees that Landlord may transfer Tenant's Security Deposit and advanced Rent to the new landlord.

(C) Landlord's responsibilities to Tenant under this Lease end after the Property has been sold and the Lease transferred to a new landlord.

**27. IF GOVERNMENT TAKES PROPERTY**

(A) The government or other public authority can take private property for public use. The taking is called condemnation.

(B) If any part of the Property is taken by the government, Landlord will reduce Tenant's Rent proportionately. If all the Property is taken or is no longer usable, this Lease will end, Tenant will move out and Landlord will return to Tenant any unused Security Deposit or prepaid Rent.

(C) No money paid to Landlord for the condemnation of the Property will belong to Tenant.

**28. DEATH OF TENANT DURING LEASE TERM**

(A) If Tenant dies during the Term, or any Renewal Term, of this Lease and Tenant's personal property remains in the Property, the personal property will not be considered abandoned as defined in the Landlord and Tenant Act. When a tenant dies and leaves behind personal property, the treatment of that personal property is governed by Title 20 of the Pennsylvania Consolidated Statues relating to decedents, estates and fiduciaries.

(B) If Tenant dies during the Term, or any Renewal Term, of this Lease and Tenant is the sole tenant of the Property, Tenant's representative may terminate this Lease upon 14 days written notice to Landlord. When Tenant's representative terminates this Lease pursuant to this Paragraph, the date of termination will be the last day of the second calendar month that follows the calendar month in which Tenant died or upon surrender of the rental unit and removal of all of Tenant's personal property, whichever occurs later.

(C) Tenant's estate will be required to pay Rent. Additional Rent and any other sums due to Landlord, including expenses that Landlord may incur as a direct result of Tenant's death. Tenant's estate is not required to pay any penalty, and is not liable for any damages to landlord for breach of contract or early termination of the Lease.

**29. TENANTS' RIGHTS**

(A) Landlord cannot increase rents, decrease services, or threaten to go to court to evict Tenant because Tenant: (1) complains to a government agency or to Landlord about a building or housing code violation; (2) organizes or joins a tenant's organization; or (3) uses Tenant's legal rights in a lawful manner.

(B) Landlord or property owner may have a mortgage on the Property. The rights of the mortgage lender come before the rights of the Tenant. For example, if Landlord fails to make mortgage payments, the mortgage lender could take the Property and end this Lease. Landlord will notify Tenant immediately if the property owner or Landlord receive a notice of foreclosure.
**TENANT MAY BE WAIVING OR GIVING UP TENANT'S RIGHTS. TENANT UNDERSTANDS THAT IF THERE IS A FORECLOSURE, THE NEW OWNER MAY HAVE THE RIGHT TO END THIS LEASE.**

**30. LEAD-BASED PAINT HAZARD DISCLOSURES FOR PROPERTY BUILT BEFORE 1978**

☐ Property was built in or after 1978. No Lead-Based Paint Hazards Disclosure is required.

☒ Property was built before 1978. **Before signing this Lease, Tenant must receive a separate Lead-Based Paint Hazards Disclosure** disclosing the presence of lead-based paint and lead-based paint hazards on the Property, such as PAR form LPDR, and a federally approved pamphlet on lead poisoning prevention.

**31. PENNSYLVANIA PLAIN LANGUAGE CONSUMER CONTRACT ACT**

The Office of Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms must comply with the Pennsylvania Plain Language Consumer Contract Act.

**32. CAPTIONS**

The headings in this Lease are meant only to make it easier to find the paragraphs.

**33. ENTIRE AGREEMENT**

This Lease is the entire agreement between Landlord and Tenant. No spoken or written agreements made before signing this Lease are a part of this Lease unless they are included in this Lease in writing. No waivers or modifications of this Lease during the Term of this Lease are valid unless in writing signed by both Landlord and Tenant, including modifications made to the Rules and Regulations under Paragraph 12.

Tenant Initials: _____

Landlord Initials: _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

5460 Camp

**34.  SPECIAL CLAUSES**

(A)  **The following are part of this Lease if checked:**
- ☐ Change of Lease Terms Addendum (PAR Form CLT)
- ☐ Pet Addendum (PAR Form PET)
- ☒ Residential Lead-Based Paint Hazards Disclosure Form for rentals (PAR form LPDR)
- ☐ _____
- ☐ _____

(B)  **Additional Terms:**

Tenants must not remove screens.

Tenants must use air conditioning support bracket on any installed window ac units.

Tenants must not let debris accumulate (including litter from public) and must have it all removed weekly or will be responsible for twice the clean up fee.

At move out tenants will be charged twice the clean up fee at move out for any mess left behind.

House is damage-free except side of kitchen counter.

No smoking indoors or $1,500 fee to repaint walls.

Property must be maintained be reasonably clutter and debris-free.

*Landlord is a PA Licensed Realtor*
*Tenant to reimburse landlord for water/sewer within 10 days of receiv b)11*

**NOTICE BEFORE SIGNING: If Tenant or Landlord has legal questions, Tenant or Landlord is advised to consult an attorney.** If a real estate licensee is involved in the transaction on behalf of either party, by signing below, Landlord and Tenant acknowledge receipt of the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336 and/or §35.337.

By signing below, Landlord and Tenant acknowledge that they have read and understand the notices and explanatory information set forth in this Lease.

A property manager may be acting as an agent for Landlord and may execute this Lease on the Landlord's behalf.

| | |
|---|---|
| TENANT _____ | DATE 6/24/19 |
| TENANT _____ | DATE _____ |
| TENANT _____ | DATE _____ |
| CO-SIGNER Richard Martin | DATE 6/24/2019 |
| CO-SIGNER —35F3542F50E848D. | DATE _____ |
| CO-SIGNER _____ | DATE _____ |
| LANDLORD Christine Thierry | DATE _____ |
| LANDLORD _____ | DATE 06/23/2019 |
| EXECUTED ON BEHALF OF LANDLORD BY AUTHORIZED BROKER/ASSOCIATE BROKER | DATE _____ |
| _____ | DATE _____ |

## LANDLORD TRANSFERS LEASE TO A NEW LANDLORD

As part of payment received by Landlord. _____ (current Landlord) now transfers to other benefits. _____ (new landlord) his heirs and estate, this Lease and the right to receive the Rents and

| | |
|---|---|
| CURRENT LANDLORD _____ | |
| CURRENT LANDLORD _____ | DATE _____ |
| NEW LANDLORD _____ | DATE _____ |
| NEW LANDLORD _____ | DATE _____ |
| | DATE _____ |

RL Page 7 of 7

**RESIDENTIAL LEAD-BASED PAINT HAZARDS DISCLOSURE FOR RENTALS**   LPDR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors®. (PAR)

## THIS FORM MUST BE COMPLETED FOR ANY PROPERTY BUILT PRIOR TO 1978

1  PROPERTY  1142 RAILROAD ST BETHLEHEM PA 18015
2  LANDLORD   CHRISTINE THIERRY

3  **LEAD WARNING STATEMENT**
4  Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not
5  managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing.
6  landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also
7  receive a federally approved pamphlet on lead poisoning prevention.
8  **LANDLORD'S DISCLOSURE - PRESENCE OF LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS**
9  __X__ / ____  Landlord has no knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the housing.
10 ____ / ____  Landlord has knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the housing.
11             Explain: ____
12
13
14 **RECORDS AND REPORTS AVAILABLE TO TENANT**
15 __X__ / ____  Landlord has no records or reports pertaining to lead-based paint and/or lead-based paint hazards in the housing.
16 __X__ / ____  Landlord has provided Tenant with all available records and reports regarding lead-based paint and/or lead-based paint
17             hazards in the housing. (List documents): ____
18

19 Landlord certifies that to the best of Landlord's knowledge the above statements are true and accurate.
20 LANDLORD ____
21 LANDLORD ____                                                    DATE  6/24/19
22 LANDLORD ____                                                    DATE ____
                                                                  DATE ____

23 TENANT ____
24 DATE OF LEASE   6.24.19
25 **TENANT'S ACKNOWLEDGMENT**
26 ____ / ____  Tenant has received the pamphlet *Protect Your Family from Lead in Your Home* and has read the Lead Warning Statement.
27 ____ / ____  Tenant has reviewed Landlord's disclosure of known lead-based paint and/or lead-based paint hazards and has received
28             the records and reports regarding lead-based paint and/or lead-based paint hazards identified above, if any.

29 Tenant certifies that to the best of Tenant's knowledge the statements contained in Tenant's Acknowledgement are true and
30 accurate.
31 TENANT ____
32 TENANT ____                                                    DATE  6/24/19
33 TENANT ____                                                    DATE ____
                                                                  DATE ____

34 **AGENT ACKNOWLEDGEMENT AND CERTIFICATION**
35 ____  Agent/Licensee represents that Agent has informed Landlord of Landlord's obligations under the Residential Lead-
36        Based-Paint Hazard Reduction Act, 42 U.S.C. §4852(d), and is aware of Agent's responsibility to ensure compliance.

37 The agents have reviewed the information in the Agent Acknowledgement and certify, to the best of their knowledge, that the
38 information provided is true and accurate. Landlord Agent and Tenant agent must both sign this form.

39 **BROKER FOR LANDLORD (Company Name)** ____
40 LICENSEE ____                                                  DATE ____

41 **BROKER FOR TENANT (Company Name)** ____
42 LICENSEE ____                                                  DATE ____

 Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev 9/15, rel 1/18

Howard Hanna The Frederick Group, 3500 Winchester Road, Suite 201 Allentown PA 18104
Phone: 6103104856          Fax: 8886133585
                                Christine Thierry
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          5460 Camp Meeting

Exhibit "C"



# Magisterial District Judge 03-2-11

## DOCKET

Docket Number: MJ-03211-LT-000044

**Landlord/Tenant D**

Christine M. Thierry
v.
Elyssa  Beltran

**Judge Assigned:** Magisterial District Judge Nicholas E. Englesson

### CASE INFORMATION

Pag

| | |
|---|---|
| **Claim Amount:** | $1,190.00 |
| **Judgment Amount:** | $2,646.05 |

**File Date:** 12/11/2019

**Case Status:** Closed
**County:** Northampton

### CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Recovery of Real Property Hearing | 12/26/2019 | 10:00 am | | Magisterial District Judge Nicholas E. Englesson | Scheduled |

### CASE PARTICIPANTS

| Participant Type | Participant Name | Address |
|---|---|---|
| Defendant | Beltran, Elyssa | Bethlehem, PA 18015 |
| Plaintiff | Thierry, Christine M. | New York, NY 10019 |

### DISPOSITION SUMMARY

**Docket Number** MJ-03211-LT-0000446-2019

**Plaintiff** Christine M. Thierry

**Defendant** Elyssa Beltran

**Disposition** Judgment for Plaintiff

**Disposition Date** 12/26/2019

**Disposition Date:** 12/26/2019

### CIVIL DISPOSITION / JUDGMENT DETAILS

**Monthly Rent:** $1,190.00

**Defendant(s)** Elyssa Beltran

**Plaintiff(s)** Christine M. Thierry

**Disposition** Judgment for Plaintiff

| Judgment Components: Type | Amount | Deposit Amount | Adjusted Amount | Joint/Several Liability | Individual Liability | Ne Judgment |
|---|---|---|---|---|---|---|
| Rent in Arrears | $2,499.00 | $0.00 | $2,499.00 | $0.00 | $2,646.05 | $2,646.05 |
| Costs | $147.05 | $0.00 | $147.05 | | | |

* Is Joint/Several

**Civil Disposition Details:**

Grant possession.
Grant possession if money judgment is not satisfied by the time of eviction.

Yes

No

MDJS 1200

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets  Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data , errors or omissions on these docket sheets.  You should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.

# Magisterial District Judge 03-2-11
## DOCKET

Docket Number: MJ-03211-LT-0000446-2019

# Landlord/Tenant Docket

Christine M. Thierry

v.

Elyssa Beltran

Page 2 of 2

### DOCKET ENTRY INFORMATION

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 12/27/2019 | Entry of Satisfaction Entered by Plaintiff | Christine M. Thierry | Elyssa Beltran, Defendant |
| 12/26/2019 | Judgment for Plaintiff | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/26/2019 | Judgment Entered | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/12/2019 | Landlord/Tenant Complaint Successfully Served | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/11/2019 | Landlord/Tenant Complaint Issued via Hand Delivery | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/11/2019 | Landlord/Tenant Complaint Filed | Christine M. Thierry | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data , errors or omissions on these docket sheets. You should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.

## VERIFICATION

Christine M. Thierry verifies that she is Plaintiff in the within matter, that the facts set forth in the within document are true and correct to the best of her knowledge, information and belief.  She understands that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date:  7/20/2021

IN THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY, PENNSYLVANIA

Christine M. Thierry,                     : CIVIL ACTION - LAW
        Plaintiff                        :
      vs.                                :
                             : NO.    C-48-CV-2019-12041
Richard Martin,                           :
        Defendant                        :

## CERTIFICATE OF SERVICE

I certify that on July 21, 2021, I served a true and correct copy of the PLAINTIFF'S FIRST

AMENDED COMPLAINT filed in the above-captioned matter by mailing and emailing

the same to: Mark S Sigmon 146 E. Broad St. PO Box 1365 Bethlehem, PA 18016-1365.


Date: 7/21/2021_____

_____

Christine M. Thierry

FIRST AMENDED COMPLAINT

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Christine M Thierry

**(b)** County of Residence of First Listed Plaintiff   New York, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

## DEFENDANTS

Richard Martin

County of Residence of First Listed Defendant   Northampton, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Mark Sigmon

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
Plaintiff
- [ ] 2   U.S. Government
Defendant
- [ ] 3   Federal Question
*(U.S. Government Not a Party)*
- [x] 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | **PERSONAL INJURY** | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 365 Personal Injury - Product Liability | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | **LABOR** | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 865 RSI (405(g)) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [x] 5   Transferred from Another District *(specify)* NYSD
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S. Code § 1332 - Diversity of ...
Brief description of cause:
Damages in excess of $75,000 Bre...

**EXHIBIT**

C

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
10/22/2022

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Pennsylvania

| | |
|---|---|
| Christine M. Thierry <br><br><br> *Plaintiff(s)* <br> v. <br> Richard Martin <br><br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) <br> Civil Action No. 5:2021cv04421 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Richard Martin
3110 Easthill Dr. Bethlehem, PA 18017

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Christine M. Thierry
610 5th Ave #145
New York, NY 10185

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____10/22/2021_____          _____
                                           *Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

Christine M. Thierry,  : Case No.
      Plaintiff  :
      vs.  :
Richard Martin,  : JURY TRIAL
      Defendant  :

## FIRST AMENDED COMPLAINT FOR A CIVIL CASE
### (28 U.S.C. § 1332; Diversity of Citizenship)

1.     The amount in controversy, exclusive of interest and costs, exceeds Seventy Five Thousand Dollars ($75,000.00).

2.     Plaintiff Christine M. Thierry is an adult individual residing at 610 5th Ave #145 New York, NY 10185 in New York County New York.  Her email is CT1869@gmail.com and phone is 631-599-2760.

3.     Defendant Richard Martin is an adult individual residing at 3110 Easthill Dr. Bethlehem, PA 18017 in Northampton County, PA.  His email and phone are rfm193910@yahoo.com and 484-707-4978.

4.     On or about June 24, 2019, Plaintiff and Defendant entered into a certain Residential Lease ("Lease or Contract"), whereby Defendant cosigned a Lease for a house owned by the Plaintiff and located at 1142 Railroad Street, Northampton County, Bethlehem Pennsylvania 18015, more fully described in the Lease ("Premises").  A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

5.     Elyssa Beltran is the "Tenant" on the Lease.

6.     Richard Martin is the "CoSigner" on the Lease.

7.     Ms. Beltran was living with Richard Martin before she became tenant to plaintiff.

8.     Ms. Beltran provided to plaintiff's property manager Richard Martin's address as

1

her new address after moving out of the premises.

9.    Richard Martin paid the rent for the premises.

10.    Richard Martin paid the utilities for the premises.

11.    Richard Martin scheduled landlord inspections with landlord for the premises.

12.    Richard Martin scheduled real estate showings for the premises.

13.    Richard Martin granted access to the premises.

14.    Mr. Martin was at premises for landlord inspections.

15.    Richard Martin was responsible for the care of the premises.

16.    Richard Martin was financially responsible for the lease and all its terms.

17.    Ms. Beltran was under Mr. Martin's financial care during the term of the lease.

18.    Ms. Beltran was under Mr. Martin's emotional care during the term of the lease.

19.    Ms. Beltran was could not or would not care for herself as an adult during the term of the lease.

20.    The parties had an agreement that Mr. Martin was to be contacted for any issues including damages, rent, fees regarding the lease and/or premises.

21.    Ms. Beltran and Mr. Martin used the premises for illicit activities.

22.    Ms. Beltran and Mr. Martin used the premises for illegal activities.

23.    Mr. Martin was charged with criminal harassment of plaintiff.

24.    Mr. Martin intentionally allowed the premises to be severely damaged.

25.    Mr. Martin intentionally interfered with plaintiff's business.

26.    Mr. Martin committed assault and battery against plaintiff.

27. The lease required "Rent" to be paid the 24th of each month in the sum of $1,190.

28. The lease allowed for a 2-day grace period for any fees that are due before late fees are charged of $10 per day at line 48.

29.   The lease states, "all other payments due...are considered Additional Rent. Failure to pay Additional Rent is a breach of lease..." Lines 49-50.

30.   The lease states, "all payments will be applied against outstanding Additional Rent that is due before they will be applied against the current rent due." Lines 51-52.

31.   District Magistrate granted plaintiff the right to end lease early in addition to awarding plaintiff monetary damages of $2,646.05 on December 26, 2020, due to multiple violations of lease including damages and failure to pay.  A true and correct copy is attached as Exhibit "B".

32.   The parties agreed to stop violating lease including removing hazardous debris and garbage amassed on the exterior of the premises, and signed an addendum on December 26, 2019, after the hearing referenced above in Line 34.

33.   Plaintiff honored her responsibilities of the agreement in line 35 and did not have sheriff provide eviction services, a right which she was awarded at the Magistrate Court.

34.   The defendant immediately breached the agreement noted line 35.

35.   The defendant owes monies per lease and has refused to pay it.

3

36.     The contract has been breached.

37.     At expense to plaintiff, a collection company was hired to collect amount owed from plaintiff as it was accruing at $10 per day late fee per the lease.

38.     The defendant acknowledged receipt of the bills, but did not pay any bills from the collection company.

39.     At expense to plaintiff, a property manager was then hired to resolve the lease violations and collect monies owed from plaintiff which was accruing at $10 per day per the lease.

40.     The defendant did not pay bills from the property management company.

41.     The collection company and property manager were unsuccessful in collecting monies owed to plaintiff.

43.     In accordance with the lease *all payments [from defendant] were applied against outstanding Additional Rent that is due before they were applied against the current rent.*

44.     The Defendant has been made aware rent, fees and costs are past due.

45.     Defendant was made aware of multiple lease violations.

46.     Defendant was made aware of accruing fees.

47.     Defendant refused to comply or correct violations.

48.     Defendant directly contributed to damages owed to plaintiff.

49.     Defendant has firsthand knowledge of the Premises.

50.     The lease on lines 4-7 states defendant "is individually responsible for all obligations of the Lease, including Rent, late fees, damages, and other costs."

51.     Defendant was made aware late fees are accruing in accordance with lease.

52.     Defendant is aware property has been damaged.

53.     Defendant is aware the payments he made were applied to late fees and property damage, not the rent, in accordance with lease.

54.     Defendant did not pay for the rent during the last several months of the lease.

55.     Defendant has failed to mitigate damages.

56.     Defendant is liable to plaintiff for all costs and expenses not paid on lease in accordance with lease.

57.     Defendant willfully and negligently continues to deny plaintiff compensation he agreed to in lease and;

58.     As a direct result of the actions of the Defendant failing to honor the contract in denying Plaintiff legally required rent and fees, Plaintiffs have been damaged as follows:

    a.     Collection, property management and administrative fees in the amount of Five Thousand Dollars ($5,000.00);

    b.     Loss of use of property in the amount of Nine Thousand Dollars ($9,000.00);

    c.     Repairs and restore the Premises in the amount of Twenty-One Thousand Five Hundred Dollars ($21,500.00);

    d.     Accruing late fees;

    e.     Legal fees of Two Thousand Dollars ($2,402);

    f.     Other fees to be decided at trial including requested punitive damages of $100,000;

## COUNT I - BREACH OF CONTRACT

59.     Paragraphs 1 through 58 are incorporated herein by reference in their entirety.

60.     Plaintiff fully complied with all the terms and conditions of the Lease.

61.     As a direct result of the Defendants' and tenant's material breach of the Lease, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.

## COUNT II - FRAUDULENT MISREPRESENTATION

62.     Paragraphs 1 through 61 are incorporated herein by reference in their entirety.

63.     On behalf of the Plaintiff, Defendant Richard Martin fraudulently misrepresented to the tenant that tenant need not comply with lease.

64.     The fraudulent misrepresentation set forth in Paragraphs 63 above was material to the transaction in question, and was made with knowledge that it was false, or with recklessness as to whether it was true or false.

65.     Further, the fraudulent misrepresentation set forth in Paragraphs 63-64 above was done so with the intent of misleading the tenants to continue to damage Plaintiff by relying on the misrepresentations.

66.     Being that the tenant refused communication or to allow access to property unless defendant instructed her to do so, and the defendant instructed all communications were to be

routed through him, tenant relied on the fraudulent misrepresentation made to her by Defendant Richard Martin.

67.     As a direct result of tenant's reliance on the fraudulent misrepresentation made by the Defendant, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

68     Defendants' conduct in making the fraudulent misrepresentation set forth in Paragraphs 63-66 above was willful, wanton and outrageous, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant, plus punitive damages, interest and costs.

## COUNT III - NEGLIGENT MISREPRESENTATION

69.     Paragraphs 1 through 68 are incorporated herein by reference in their entirety.

70.     In the alternative, Defendant Richard Martin negligently misrepresented to the tenant that they need not to pay their rent.

71.     The defendant Martin negligently misrepresented to the tenant that they did not need to comply with lease.

72.     The negligent misrepresentation set forth in Paragraphs 70-71 above made by Defendant was material to the transactions in question.

7

73.    Defendant Richard Martin made the negligent misrepresentation to tenant set forth in Paragraphs 70-72 above without knowledge of its truth or falsity, or in the alternative, should have known that said misrepresentation was false.

74.    Defendant made the negligent misrepresentation to tenant set forth in Paragraphs 70-72 above with the intent to induce the tenant to rely on said misrepresentation, and to continue to violate contract.

75.    Being that the tenant would only take calls from the Defendant, not the Plaintiff, tenant relied upon the negligent misrepresentation made to them by Defendants to not comply with the contract.

76.    As a direct result of tenant's reliance on the negligent misrepresentation made to her by Defendant, as more fully set forth in Paragraphs 69-72 above, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.


## COUNT IV - INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL/BUSINESS RELATIONS

77.    Paragraphs 1 through 76 are incorporated herein by reference in their entirety.

78.    In acting as a landlord, Plaintiff enters contractual relationships with tenants, and the Plaintiff seeks to find tenants who honor contractual relationships.

8

79.     Further, given the state of the property which was 95% gut renovated and new at the time Defendants cosigned the lease and entered into contract with Plaintiff, numerous damages have occurred in violation of contract that will required loss of rents, loss of sales, carrying costs, significant construction, loss of showings, and loss of customers to repair.

80.     The purpose of the Defendants' unlawful actions was to interfere with the existing contractual relationship of the Plaintiffs and her tenant, and to prevent the prospective contractual relationships of the Plaintiffs and her new tenants or buyers from occurring.

81.     The Defendants' unlawful actions against the Plaintiffs were taken without privilege or justification.

82.     As a direct result of the Defendants' unlawful actions in causing tenant Elyssa Beltran to keep possession of, and continue to damage Premises, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

83.     Defendants' unlawful conduct in was willful, wanton and outrageous, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her favor, and against Defendant.


## COUNT V - CIVIL CONSPIRACY

84.     Paragraphs 1 through 83 are incorporated herein by reference in their entirety.

85.    Plaintiff believes, and therefore aver, that the Defendant acted in concert when Defendant's actions to have tenant keep possession of, allow further damage to premises, and deny Plaintiffs from rights to her Premises were unlawful on multiple occasions.

86.    Plaintiff believes, and therefore aver, that Defendant took those unlawful actions on multiple occasion with malice aforethought and intended to injure the Plaintiff by preventing her possession and full access to the Premises, and therefore, the operation of her business.

87.    One occasion was on June 7, 2020, when Defendant acted in concert with others when defendant assaulted, committed battery, harassed plaintiff, and also denied plaintiff from rights to her premises.  These actions were all unlawful.

88.    As a direct result of the Defendants' unlawful actions, Plaintiffs sustained the itemized damages set forth in Paragraph 58 above, which is incorporated herein by reference in its entirety.

89.    Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiffs, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## COUNT VI – ASSAULT

90.    Paragraphs 1 through 89 are incorporated herein by reference in their entirety.

91.    On June 7, 2020, Defendant assaulted plaintiff.

92.    The defendant intentionally and maliciously caused harm to plaintiff.

10

93.     The defendant chased plaintiff then shoved her when she reached a closed exit door, then informed her he was spitting COVID into plaintiff's face.

94.     The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

95.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiffs to punitive damages.

96.     Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiffs, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.


## COUNT VII – BATTERY

97.     Paragraphs 1 through 96 are incorporated herein by reference in their entirety.

98.     On June 7, 2020 Defendant committed battery against plaintiff.

99.     The defendant intentionally and maliciously caused harm to plaintiff.

100.    The defendant chased plaintiff then shoved her when she reached a closed exit door, then informed her he was spitting COVID-19 into plaintiff's face.

101.    After the police left the premises after charging defendant with harassment, the defendant continued to harass plaintiff at the premises putting her in fear for her life.

11

102.    The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

103    Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## COUNT VIII – HARASSMENT

104.    Paragraphs 1 through 103 are incorporated herein by reference in their entirety.

105.    On June 7, 2020 Defendant harassed plaintiff.

106.    The defendant intentionally and maliciously caused harm to plaintiff.

107.    The defendant chased plaintiff and shoved her, then informed her he was spitting COVID-19 into plaintiff's face.

108.    After the police left the premises after charging defendant with criminal harassment, the defendant continued to harass plaintiff at the premises putting her in fear for her life.

109.    The defendants' egregious actions caused plaintiff severe emotional distress and lost wages and income.

110.    Defendants' unlawful actions more fully set forth above were willful, wanton and outrageous, done with malice aforethought, and intended to injure the Plaintiff, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant.

## VIII. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

CHRISTINE M. THIERRY

DATE: 10/22/2021

By: _Christine A. Thierry_ _____
CHRISTINE M. THIERRY

610 5th Ave #145
New York, NY 10185
631.599.2760

13

Exhibit "A"

14

Case 5:21-cv-04421-JMG   Document 12   Filed 12/08/21   Page 17 of 27

DocuSign Envelope ID: 825182B5-4204-4D2F-94EA-BACBF22EF226

# RESIDENTIAL LEASE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

RL

## PARTIES

**TENANT(S):** Elyssa Beltran

**LANDLORD(S):** Christine M Thierry

**TENANT'S MAILING ADDRESS:**
3110 Easthills Dr Bethlehem PA 18017

**LANDLORD'S MAILING ADDRESS:**
414 W 49th St Apt 1D
NY, NY 10019

## PROPERTY

Property Address _____ 1142 Railroad St

in the municipality of _____ Bethlehem _____ Unit _____ ZIP _____ 18015
in the School District of _____ Bethlehem _____ , County of _____ Northampton , in the Commonwealth of Pennsylvania.

## ☒ No Business Relationship TENANT'S RELATIONSHIP WITH PA LICENSED BROKER (Tenant is not represented by a broker)

Broker (Company) _____

Company License # _____
Company Address _____

Company Phone _____
Company Fax _____
Broker is:
☐ Tenant Agent (Broker represents Tenant only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Fax _____
Email _____
Licensee(s) is:
☐ Tenant Agent (all company licensees represent Tenant)
☐ Tenant Agent with Designated Agency (only licensee(s) named above represent Tenant)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Tenant)

## ☒ No Business Relationship LANDLORD'S RELATIONSHIP WITH PA LICENSED BROKER (Landlord is not represented by a broker)

Broker (Company) _____

Company License # _____
Company Address _____

Company Phone _____
Company Fax _____
Broker is:
☐ Landlord Agent (Broker represents Landlord only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Fax _____
Email _____
Licensee(s) is:
☐ Landlord Agent (all company licensees represent Landlord)
☐ Landlord Agent with Designated Agency (only licensee(s) named above represent Landlord)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Landlord)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Tenant and Landlord in the same transaction. A Licensee is a Dual Agent when a Licensee represents Tenant and Landlord in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Tenant and Landlord. If the same licensee is designated for Tenant and Landlord, the Licensee is a Dual Agent. By signing this Agreement, Tenant and Landlord each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Tenant Initials: _____

RL Page 1 of 7

Landlord Initials _____ / _____

THIS FORM SHOULD NOT BE USED FOR THE LEASE OF A MANUFACTURED HOME

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev. 9/17 rel. 1/18

15

Case 5:21-cv-04421-JMG   Document 14   Filed 12/22/21   Page 77 of 86

DocuSign Envelope ID: 825182B5-4204-4D2F-94EA-BACBF22EF226
Case 5:21-cv-04421-JMG   Document 12   Filed 12/08/21   Page 18 of 27

1. **LEASE DATE AND RESPONSIBILITIES**
   This Lease for the Property. dated ___June 24, 2019_____, is between the Landlord and Tenant. Each Tenant is individu-
   ally responsible for all of the obligations of this Lease, including Rent, fees, damages and other costs.

2. **CO-SIGNERS**
   Co-signers: Richard Martin 3110 Easthills Dr Bethlehem PA 18017

   Each Co-signer is individually responsible for all obligations of this Lease, including Rent, late fees, damages and other costs. Co-
   signers do not have the right to occupy the Property as a tenant without the Landlord's prior written permission.

3. **PROPERTY CONTACT INFORMATION**
   Rental Payments (see Paragraph 7(H) for additional information)
   Payable to: Christine M Thierry
   Address: 414 W 49th St Apt 1D NY, NY 10019          Phone: (610) 310-4856
   **Maintenance Requests**
   Contact: SAME
   Address: 414 W 49th St Apt 1D NY, NY 10019          Phone: (610) 310-4856
   Email: ct1869@gmail.com
   **Emergency Maintenance Contact**                    Website:
   Contact: SAME
   Email:                                               Phone:

4. **STARTING AND ENDING DATES OF LEASE** (also called "Term")    Website:
   (A) **Starting Date:** 6/24/2019
   (B) **Ending Date:** 6/23/2020
   (C) Tenant is required to vacate the Property on the Ending Date unless the parties have entered into a Renewal Term as described in
       Paragraph 5.                                            , at _3:00_ ☐ a.m. ☒ p.m.
                                                               , at _11:59_ ☐ a.m. ☒ p.m.

5. **RENEWAL TERM**
   Unless checked below, this Lease will AUTOMATICALLY RENEW for a Renewal Term of _____ (month-to-month
   if not specified) at the Ending Date of this Lease or at the end of any Renewal Term unless proper notice is given. Proper notice re-
   quires Tenant or Landlord to give at least _____ days (30 if not specified) written notice before Ending Date or before the end of any
   Renewal Term. Any renewal will be according to the terms of this Lease or any written changes to it.
   ☐ This Lease will TERMINATE on the Ending Date unless extended in writing.

6. **SECURITY DEPOSIT**
   (A) The Security Deposit will be held in escrow by Landlord, unless otherwise stated here _____
       at (financial institution): PNC
       Financial institution Address: BETHLEHEM,  PA
   (B) When Tenant moves from the Property, Tenant will return all keys and give Landlord written notice of Tenant's new mailing address
       where Landlord can return the Security Deposit. If Tenant fails to do this, Landlord will not have to provide the list of damages and
       the remaining security deposit to Tenant as stated in subparagraph (C), below.
   (C) Within 30 Days after Tenant moves from the Property, Landlord will give Tenant in the Pennsylvania Landlord and Tenant Act.
       which the Landlord claims Tenant is responsible. Any remaining Security Deposit will be returned to Tenant within 30 days after
       Tenant moves from the Property. **TENANT IS ADVISED THAT FAILURE TO PROVIDE LANDLORD WITH A FOR-**
       **WARDING ADDRESS MAY CAUSE TENANT TO LOSE SOME RIGHTS.**
   (D) Landlord may deduct repair costs and any unpaid Rent and Additional Rent from Tenant's Security Deposit. Tenant may be respon-
       sible for any unpaid expenses remaining after Landlord deducts costs from security deposit.

7. **RENT**
   (A) Rent is due in advance, without demand, on or before the _____24th_____ day of each month (Due Date).
   (B) The amount of Total Rent due during the Term is: $
   (C) The Rent due each month is: $~~1,090.00~~ 1190
   (D) If Rent is more than ___2___ days (5 if not specified) late (Grace Period), Tenant pays a Late Charge of: $10 PER DAY
   (E) All other payments due from Tenant to Landlord, including Late Charges or utility charges, are considered to be Additional Rent.
       Failure to pay this Additional Rent is a breach of the Lease in the same way as failing to pay the regular Rent.
   (F) Tenant agrees that all payments will be applied against outstanding Additional Rent that is due before they will be applied against
       the current Rent due. When there is no outstanding Additional Rent, prepayment will be applied to the month's Rent that would be
       due next.
   (G) Tenant will pay a fee of $50.00 _____ for any payment that is returned or declined by any financial institution
       for any reason. If payment is returned or declined, the Grace Period does not apply and the Late Charges will be calculated from
       the Due Date. Any Late Charges will continue to apply until a valid payment is received.

Tenant Initials: _____

RL Page 2 of 7

Landlord Initials: _____

5460 Camp

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case 5:21-cv-04421-JMG   Document 14   Filed 12/22/21   Page 78 of 86
DocuSign Envelope ID: 825182B5-4204-4D2F-94EA-BACBF22EF226
Case 5:21-cv-04421-JMG   Document 12   Filed 12/08/21   Page 19 of 27

*Rent to be deposited in landlords PNC i*

(H)  Landlord will accept the following methods of payment: ( ☒ Cash) ( ☒ Money Order) ( ☐ Personal Check)
( ☐ Credit Cards) _____ ( ☐ Cashier's Check) ( ☐ Other: _____
Landlord can change the acceptable methods of payment if a method fails (check bounces, credit card is declined, etc.).

(I)  The first $ _____ of Rent due will be made payable to _____
for Landlord. If not specified, the Security Deposit will be made payable to Landlord, or Landlord's representative. _____ (Broker

(J)  The Security Deposit may not be used to pay Rent during the Term or Renewal Term of this Lease.

**8.  PAYMENT SCHEDULE**

| | | Due Date | Paid | Due | |
|---|---|---|---|---|---|
| (A) | Security Deposit: ~~1090~~ 1,190 | | 1090 | | |
| (B) | First month's Rent: ~~1090~~ 1,190 | 06/23/2019 | $~~1190~~ 1,090.00 | $ 100 | |
| (C) | Other: Last months rent | 6/23/2019 | $~~1190~~ 1,090.00 | $ 100 | |
| (D) | Other: | 7/3/2019 | $ 1090 | $ 1,090.00 | |
| (E) | Other: | | $ | $ | |
| | Total Rent and security deposit received to date: | | $ 2,180 ✓ | $ 1290 | |
| | Total amount due | | | $ 1090 | |

by June 2

**9.  USE OF PROPERTY AND AUTHORIZED OCCUPANTS**

(A)  Tenant will use the Property as a residence ONLY.

(B)  Not more than ___4___ people will live at the Property. List all other occupants who are not listed as Tenants in this Lease:

Name  Elyssa Beltran                          Name  Lucy Carlo

Name  Anialyce Ditron     ☒ 18 or older      Name  Arez Bouie     ☒ 18 or older

Guide or support animals: Type _____ ☐ 18 or older                Name _____ ☐ 18 or older

☐ Additional information is attached      Breed _____

**10.  POSSESSION**

(A)  Tenant may move in (take possession of the Property) on the Starting Date of this Lease.

(B)  If Tenant cannot move in within _____ days (0 if not specified) after Starting Date because the previous tenant is still there or because of property damage which makes the Property unsafe, unsanitary, or unfit for human habitation, Tenant's exclusive rights are to:

1.  Change the Starting Date of the Lease to the day when Property is available. Tenant will not owe or be charged Rent until the Property is available; OR

2.  End the Lease and have all money already paid as Rent, Additional Rent or Security Deposit returned, with no further liability on the part of Landlord or Tenant.

**11.  LANDLORD'S RIGHT TO ENTER**

(A)  Tenant agrees that Landlord or Landlord's representatives may enter the Property at reasonable hours to inspect, repair, or show the Property. Tenant does not have to allow possible tenants or other licensees to enter unless they are with Landlord or Landlord's representative, or they have written permission from the Landlord.

(B)  When possible, Landlord will give Tenant _____ hours (24 if not specified) notice of the date, time, and reason for the visit.

(C)  In emergencies, Landlord may enter the Property without notice. If Tenant is not present, Landlord will notify Tenant who was there and why within _____ hours (24 if not specified) of the visit. Showing the property is not considered an emergency.

(D)  Landlord may put up For Sale or For Rent signs, use lock boxes, and take pictures and video on, in, or near the Property.

**12.  RULES AND REGULATIONS**

(A)  ☒ Rules and Regulations for use of the Property and common areas are attached.
☐ Homeowners Association or Condominium rules and regulations for the Property are attached.

(B)  Any violation of the Rules and Regulations is a breach of this Lease.

(C)  Landlord may create or modify the Rules and Regulations if the change benefits the Tenant, is intended to protect the condition or value of the Property, or improves the health, safety, or welfare of others. Landlord agrees to provide all changes to Tenant in writing.

(D)  Tenant is responsible for Tenant's family and guests obeying the Rules and Regulations and all laws.

(E)  If any fine is imposed on Landlord by the municipality or any other governing body because of the actions of Tenant, or Tenant's family or guests, Tenant will reimburse Landlord or pay the fine. Any unpaid fines will be considered Additional Rent.

**13.  PETS**

Tenant will not keep or allow any pets on any part of the Property, unless checked below. Guide and support animals are not pets.
☐ Tenant may keep pets with Landlord's written permission according to the terms of the attached Pet Addendum and/or Rules and Regulations.

**14.  CONDITION OF PROPERTY AT MOVE IN**

Tenant has inspected the Property and agrees to accept the Property "as-is," except for the following: _____

Tenant Initials: _____

RI, Page 3 of 7

Landlord Initials: _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

5460 Camp

DocuSign Envelope ID: 825182B5-4204-4D2F-94EA-BACBF22EF226

15. **APPLIANCES INCLUDED**

( ☒ Range/Oven)   ( ☒ Cooktop)   ( ☐ Refrigerator)   ( ☐ Dishwasher)
( ☐ Microwave)   ( ☐ Air Conditioning Units - Number: _____ )   ( ☒ Other _washer dryer combination_ )   ( ☐ Washer)   ( ☐ Dryer)   ( ☐ Garbage Disposal)
Landlord is responsible for repairs to appliances listed above unless otherwise stated here: _____

16. **UTILITIES AND SERVICES**

Landlord and Tenant agree to be responsible for the following utilities and services provided for the Property as marked below, including connection and payment of fees and charges. **If a service is not marked as being the responsibility of Landlord, it is the responsibility of Tenant to pay for that service.** Landlord is not responsible for loss of service if interrupted by circumstances beyond Landlord's control. Tenant will notify Landlord if Tenant receives any notices from utility companies of a pending termination of service.

| Landlord | Tenant | | Landlord | Tenant | |
|---|---|---|---|---|---|
| ☐ | ☐ | Cooking Gas/Fuel | ☐ | ☒ | Air Conditioning |
| ☐ | ☒ | Electricity | ☐ | ☒ | Air Conditioning Maintenance |
| ☐ | ☒ | Cable/Satellite Television | ☐ | ☒ | Heat gas |
| ☐ | ☐ | Condominium/Homeowners Association Fee | ☐ | ☒ | Hot Water ELECTRIC (type) |
| ☐ | ☐ | Parking Fee | ☐ | ☒ | Cold Water (type) |
| ☐ | ☒ | Maintenance of Common Areas | ☐ | ☒ | Pest/Rodent Control |
| ☐ | ☒ | Trash Removal | ☐ | ☒ | Bed Bugs Remediation |
| ☐ | ☒ | Recycling Removal | ☐ | ☒ | Snow/Ice Removal |
| ☐ | ☒ | Sewage Fees | ☐ | ☒ | Telephone Service |
| ☒ | ☐ | Sewer Maintenance | ☐ | ☒ | Lawn and Shrubbery Care |
| ☒ | ☐ | Heater Maintenance | ☐ | ☒ | _rake parking area divets  if needed_ |

Comments: _____

17. **TENANT'S CARE OF PROPERTY**

(A) Tenant will:
1. Keep the Property clean and safe.
2. Dispose of all trash, garbage and any other waste materials as required by Landlord and the law.
3. Use care when using any of the electrical, plumbing, heating, ventilation or other facilities or appliances on the Property, including any elevators.
4. Notify Landlord immediately of any repairs needed and of any potentially harmful health or environmental conditions.
5. Obey all federal, state, and local laws that relate to the Property.
6. Clean up after pets and guide and support animals on the Property, including common areas.

(B) Tenant will not:
1. Keep any flammable, hazardous or explosive materials on the Property, with the exception of common household goods intended for lawful use.
2. Destroy, damage or deface any part of the Property or common areas.
3. Disturb the peace and quiet of other tenants or neighbors.
4. Cancel or close utility accounts paid by Tenant during the term of the Lease, without the written permission of Landlord.
5. Make changes to the Property, such as painting or remodeling, without the written permission of Landlord. Tenant agrees that any changes or improvements made will belong to Landlord.
6. Perform any maintenance or repairs on the Property unless otherwise stated in the Rules and Regulations, if any.

(C) Tenant will have breached this Lease and will be responsible for damages if Tenant does not comply with any requirements listed in (A) or (B), above.

(D) **Tenant is responsible to pay the costs for repairing any damage that is the fault of Tenant, Tenant's family, guests, and/or guide and support animals.**

18. **DETECTORS AND FIRE PROTECTION SYSTEMS**

(A) Landlord has installed ( ☒ Smoke Detectors )  ( ☒ Carbon Monoxide Detectors )  ( ☐ fire extinguishers) in the Property. Tenant will maintain and regularly test detectors to be sure they are in working order, and will replace detector batteries as needed.

(B) Tenant will immediately notify Landlord, maintenance or emergency contact (See Paragraph 3) of any broken or malfunctioning detectors.

(C) Failure to properly maintain detectors, replace detector batteries or notify Landlord, maintenance or emergency contact (See Paragraph 3) of any broken or malfunctioning detectors is a breach of this Lease.

(D) Landlord may provide additional fire protection systems for the benefit of Tenant. Responsibility for maintaining these systems is stated in the Rules and Regulations, if any.

(E) Tenant will pay for damage to the Property if Tenant fails to maintain or misuses detectors or other fire protection systems.

Tenant Initials: _EB_ / _____

RL Page 4 of 7

Landlord Initials _____ / _____

DocuSign Envelope ID: 825182B5-4204-4D2F-94EA-BACBF22EF226

**19. DESTRUCTION OF PROPERTY**

(A)  Tenant will notify Landlord, maintenance or emergency contact (See Paragraph 3) immediately if the Property is severely damaged or destroyed by fire or by any other cause. Tenant will immediately notify Landlord, maintenance or emergency contact (See Paragraph 3) of any condition in the Property that could severely damage or destroy the Property.

(B)  If Tenant, their family or guests cause damage by fire or by other means, this Lease will remain in effect and Tenant will continue to pay rent, even if Tenant cannot occupy the Property.

(C)  If the Property is severely damaged or destroyed for any reason that is not the fault of Tenant:
1.  Tenant may continue to live on the livable part of the Property and pay a reduced rent as agreed to by Tenant and Landlord until the damage is repaired, OR
2.  If the law does not allow Tenant to live on the Property, this Lease is ended.

**20. INSURANCE AND RELEASE**

(A)  Tenant understands that Landlord's insurance does not cover Tenant, Tenant's personal property, or Tenant's guests. Tenant is advised to obtain personal property and liability insurance to protect Tenant, Tenant's personal property, and Tenant's guests who may be injured while on the Property.
☒  **IF CHECKED**, Tenant must have insurance policies providing at least $ 5,000.00 _____ personal property insurance and $ 100,000.00 _____ liability insurance to protect Tenant, Tenant's personal property and Tenant's guests who may be injured while on the Property. Tenant must maintain this insurance through the entire Term and any Renewal Term. Tenant will provide proof of insurance upon request. Tenant will notify Landlord within 10 days of changes to or cancellation of these policies.

(B)  Landlord is not legally responsible for any injury or damage to Tenant, Tenant's family, or Tenant's guests.

(C)  Tenant is responsible for any loss to Landlord caused by Tenant, Tenant's family or Tenant's guests, including reasonable attorney's fees associated with that loss, if awarded by a court.

**21. HOLDOVER TENANTS**

If Tenant occupies the Property after the Ending Date or end of any Renewal Term, Tenant will be considered a holdover tenant and will be causing Landlord financial harm ("damages"). These damages will be equal to the monthly Rent plus __10__ %, prorated on a daily basis, plus any additional financial costs, including but not limited to eviction costs and reasonable attorney's fees that may be awarded by a court, incurred as a result of the tenant holding over. These damages are separate from and in addition to Landlord's right to seek reimbursement for any physical destruction to the Property caused by Tenant, Tenant's family, or Tenant's guests.

**22. TENANT ENDING LEASE EARLY**

Tenant may **not** end this Lease before the Ending Date of the Lease or any Renewal Term unless otherwise agreed to by the parties in writing.

**23. ABANDONMENT OF PERSONAL PROPERTY**

(A)  When the Term, or any Renewal Term, ends, Tenant must remove all of Tenant's personal property from the Property. Any of Tenant's remaining personal property may be considered abandoned if any of the following apply:
1.  Tenant has vacated the Property after termination of the Lease;
2.  An eviction order or order for possession has been entered in favor of Landlord, and Tenant has vacated the Property and removed almost all of Tenant's personal property;
3.  An eviction order or order for possession has been entered in favor of Landlord;
4.  Tenant has vacated the Property, removed almost all of Tenant's personal property and provided Landlord with written notice of a forwarding address; OR
5.  Tenant has vacated the Property without showing an intent to return. Rent is more than 15 days past due and Landlord has posted notice regarding Tenant's rights to Tenant's personal property.

(B)  Before Landlord may remove or dispose of Tenant's personal property, Landlord must provide written notice to Tenant. Tenant will have ten days from the date the notice was postmarked to:
1.  Retrieve Tenant's personal property, OR
2.  Request that Tenant's personal property be stored for up to 30 days. If Tenant requests that Tenant's personal property be stored by Landlord, Tenant understands and agrees that storage will be provided at a location chosen by Landlord, and that Tenant will be responsible for storage costs.

(C)  If Tenant dies and leaves personal property in the Property, then this paragraph does not apply. See Paragraph 28, below.

**24. LANDLORD REMEDIES IF TENANT BREACHES LEASE**

(A)  If Tenant breaches Lease for any reason, Landlord's remedies may include any or all of the following:
1.  Taking possession of the Property by going to court to evict Tenant.
2.  Filing a lawsuit against Tenant for Rent, damages and Additional Rent, and for Rent and Additional Rent for the rest of the Term or any Renewal Period. If Landlord wins (gets a money judgment against Tenant), Landlord may use the court process to garnish Tenant's wages and take Tenant's personal assets, such as goods, furniture, motor vehicles and money in bank accounts.
3.  Keeping Tenant's Security Deposit to be applied against unpaid Rent or damages, or both.
4.  Tenant paying for Landlord's reasonable attorney's fees and costs, if awarded by a court.

(B)  **IF TENANT BREACHES THIS LEASE FOR ANY REASON, TENANT UNDERSTANDS AND AGREES THAT TENANT**

Tenant Initials: _____

RL Page 5 of 7

Landlord Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

5460 Camp

HAS WAIVED OR GIVEN UP TENANT'S RIGHT TO A NOTICE TO MOVE OUT UNLESS A DIFFERENT PERIOD
FOR PROVIDING NOTICE IS REQUIRED BY LOCAL ORDINANCE OR IS STATED HERE: _____

**25. TRANSFER AND SUBLEASING**
(A) Landlord may transfer this Lease to another landlord. Tenant agrees that this Lease and any written changes to it remains the same with the new Landlord.
(B) Tenant may not transfer this Lease or sublease (rent to another person) the Property or any part of the Property without Landlord's written permission.

**26. SALE OF PROPERTY**
(A) If Property is sold, Landlord will give Tenant in writing:
   1. Notice that the Security Deposit and/or prepaid Rent has been transferred to the new landlord.
   2. The name, address and phone number of the new landlord and where Rent is to be paid, if known.
(B) Tenant agrees that Landlord may transfer Tenant's Security Deposit and advanced Rent to the new landlord.
(C) Landlord's responsibilities to Tenant under this Lease end after the Property has been sold and the Lease transferred to a new landlord.

**27. IF GOVERNMENT TAKES PROPERTY**
(A) The government or other public authority can take private property for public use. The taking is called condemnation.
(B) If any part of the Property is taken by the government, Landlord will reduce Tenant's Rent proportionately. If all the Property is taken or is no longer usable, this Lease will end, Tenant will move out and Landlord will return to Tenant any unused Security Deposit or prepaid Rent.
(C) No money paid to Landlord for the condemnation of the Property will belong to Tenant.

**28. DEATH OF TENANT DURING LEASE TERM**
(A) If Tenant dies during the Term, or any Renewal Term, of this Lease and Tenant's personal property remains in the Property, the personal property will not be considered abandoned as defined in the Landlord and Tenant Act. When a tenant dies and leaves behind personal property, the treatment of that personal property is governed by Title 20 of the Pennsylvania Consolidated Statues relating to decedents, estates and fiduciaries.
(B) If Tenant dies during the Term, or any Renewal Term, of this Lease and Tenant is the sole tenant of the Property, Tenant's representative may terminate this Lease upon 14 days written notice to Landlord. When Tenant's representative terminates this Lease pursuant to this Paragraph, the date of termination will be the last day of the second calendar month that follows the calendar month in which Tenant died or upon surrender of the rental unit and removal of all of Tenant's personal property, whichever occurs later.
(C) Tenant's estate will be required to pay Rent. Additional Rent and any other sums due to Landlord, including expenses that Landlord may incur as a direct result of Tenant's death. Tenant's estate is not required to pay any penalty, and is not liable for any damages, to landlord for breach of contract or early termination of the Lease.

**29. TENANTS' RIGHTS**
(A) Landlord cannot increase rents, decrease services, or threaten to go to court to evict Tenant because Tenant: (1) complains to a government agency or to Landlord about a building or housing code violation; (2) organizes or joins a tenant's organization; or (3) uses Tenant's legal rights in a lawful manner.
(B) Landlord or property owner may have a mortgage on the Property. The rights of the mortgage lender come before the rights of the Tenant. For example, if Landlord fails to make mortgage payments, the mortgage lender could take the Property and end this Lease. Landlord will notify Tenant immediately if the property owner or Landlord receive a notice of foreclosure. **TENANT MAY BE WAIVING OR GIVING UP TENANT'S RIGHTS. TENANT UNDERSTANDS THAT IF THERE IS A FORECLOSURE, THE NEW OWNER MAY HAVE THE RIGHT TO END THIS LEASE.**

**30. LEAD-BASED PAINT HAZARD DISCLOSURES FOR PROPERTY BUILT BEFORE 1978**
☐ Property was built in or after 1978. No Lead-Based Paint Hazards Disclosure is required.
☒ Property was built before 1978. **Before signing this Lease, Tenant must receive a separate Lead-Based Paint Hazards Disclosure** disclosing the presence of lead-based paint and lead-based paint hazards on the Property, such as PAR form LPDR, and a federally approved pamphlet on lead poisoning prevention.

**31. PENNSYLVANIA PLAIN LANGUAGE CONSUMER CONTRACT ACT**
The Office of Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms must comply with the Pennsylvania Plain Language Consumer Contract Act.

**32. CAPTIONS**
The headings in this Lease are meant only to make it easier to find the paragraphs.

**33. ENTIRE AGREEMENT**
This Lease is the entire agreement between Landlord and Tenant. No spoken or written agreements made before signing this Lease are a part of this Lease unless they are included in this Lease in writing. No waivers or modifications of this Lease during the Term of this Lease are valid unless in writing signed by both Landlord and Tenant, including modifications made to the Rules and Regulations under Paragraph 12.

Tenant Initials: _____

RL Page 6 of 7

Landlord Initials: _____

5460 Camp

Case 5:21-cv-04421-JMG   Document 14   Filed 12/22/21   Page 82 of 86
Case 5:21-cv-04421-JMG   Document 12   Filed 12/08/21   Page 23 of 27
uSign Envelope ID: 825182B5-4204-4D2F-94EA-BACBF22EF226

34. **SPECIAL CLAUSES**
   (A) **The following are part of this Lease if checked:**
   ☐ Change of Lease Terms Addendum (PAR Form CLT)
   ☐ Pet Addendum (PAR Form PET)
   ☒ Residential Lead-Based Paint Hazards Disclosure Form for rentals (PAR form LPDR)
   ☐ _____
   ☐ _____

   (B) **Additional Terms:** _____

   Tenants must not remove screens.

   Tenants must use air conditioning support bracket on any installed window ac units.

   Tenants must not let debris accumulate (including litter from public) and must have it all removed weekly or will be responsible for twice the clean up fee.

   At move out tenants will be charged twice the clean up fee at move out for any mess left behind.

   House is damage-free except side of kitchen counter.

   No smoking indoors or $1,500 fee to repaint walls.

   Property must be maintained be reasonably clutter and debris-free.

   *Landlord is a PA Licensed Realtor*
   *Tenant to reimburse landlord for water/sewer within 10 days of receipt*

**NOTICE BEFORE SIGNING:** If Tenant or Landlord has legal questions, Tenant or Landlord is advised to consult an attorney. If a real estate licensee is involved in the transaction on behalf of either party, by signing below, Landlord and Tenant acknowledge receipt of the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336 and/or §35.337.

By signing below, Landlord and Tenant acknowledge that they have read and understand the notices and explanatory information set forth in this Lease.

A property manager may be acting as an agent for Landlord and may execute this Lease on the Landlord's behalf.

| | | |
|---|---|---|
| TENANT | _(signature)_ | |
| TENANT | | |
| TENANT | _____ | DATE 6/24/19 |
| CO-SIGNER | Richard Martin | DATE _____ |
| CO-SIGNER | 35F3542F60B84BD | DATE _____ |
| CO-SIGNER | _____ | DATE 6/24/2019 |
| LANDLORD | Christine Thierry _(signature)_ | DATE _____ |
| LANDLORD | _____ | DATE 06/23/2019 |

**EXECUTED ON BEHALF OF LANDLORD BY AUTHORIZED BROKER/ASSOCIATE BROKER**

_____   DATE _____

_____   DATE _____

**LANDLORD TRANSFERS LEASE TO A NEW LANDLORD**

As part of payment received by Landlord, _____

other benefits. _____ (new landlord) his heirs and estate, this Lease and the right to receive the Rents and _____ (current Landlord) now transfers to

| | | |
|---|---|---|
| CURRENT LANDLORD | _____ | |
| CURRENT LANDLORD | _____ | |
| NEW LANDLORD | _____ | DATE _____ |
| NEW LANDLORD | _____ | DATE _____ |
| | | DATE _____ |
| | | DATE _____ |

RL Page 7 of 7

5460 Camp

## RESIDENTIAL LEAD-BASED PAINT HAZARDS DISCLOSURE FOR RENTALS

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

LPDR

**THIS FORM MUST BE COMPLETED FOR ANY PROPERTY BUILT PRIOR TO 1978**

1 PROPERTY 1142 RAILROAD ST BETHLEHEM PA 18015
2 LANDLORD   CHRISTINE THIERRY

3 **LEAD WARNING STATEMENT**
4 Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not
5 managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing,
6 landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also
7 receive a federally approved pamphlet on lead poisoning prevention.
8 **LANDLORD'S DISCLOSURE - PRESENCE OF LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS**
9 X ____ / ____ Landlord has no knowledge of the presence of lead-based paint and/or lead-based paint hazards.
10 ____ / ____ Landlord has knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the housing.
11 Explain: _____
12 _____
13 _____

14 **RECORDS AND REPORTS AVAILABLE TO TENANT**
15 X ____ / ____ Landlord has no records or reports pertaining to lead-based paint and/or lead-based paint hazards in the housing.
16 X ____ / ____ Landlord has provided Tenant with all available records and reports regarding lead-based paint and/or lead-based paint
17 hazards in the housing. (List documents): _____
18 _____

19 Landlord certifies that to the best of Landlord's knowledge the above statements are true and accurate.
20 LANDLORD _____
21 LANDLORD _____
22 LANDLORD _____ DATE 6/24/1
   DATE _____
23 TENANT _____ DATE _____
24 DATE OF LEASE   6.24.19
25 **TENANT'S ACKNOWLEDGMENT**
26 ____ / ____ Tenant has received the pamphlet *Protect Your Family from Lead in Your Home* and has read the Lead Warning Statement.
27 ____ / ____ Tenant has reviewed Landlord's disclosure of known lead-based paint and/or lead-based paint hazards and has received
28 the records and reports regarding lead-based paint and/or lead-based paint hazards identified above, if any.

29 Tenant certifies that to the best of Tenant's knowledge the statements contained in Tenant's Acknowledgement are true and
30 accurate.
31 TENANT _____
32 TENANT _____
33 TENANT _____ DATE 6/24/19
   DATE _____
34 **AGENT ACKNOWLEDGEMENT AND CERTIFICATION**   DATE _____
35 ____ Agent/Licensee represents that Agent has informed Landlord of Landlord's obligations under the Residential Lead-
36 Based-Paint Hazard Reduction Act, 42 U.S.C. §4852(d), and is aware of Agent's responsibility to ensure compliance.
37 The agents have reviewed the information in the Agent Acknowledgement and certify, to the best of their knowledge, that the
38 information provided is true and accurate. **Landlord Agent and Tenant agent must both sign this form.**
39 **BROKER FOR LANDLORD** (Company Name) _____
40 LICENSEE _____
   DATE _____
41 **BROKER FOR TENANT** (Company Name) _____
42 LICENSEE _____ DATE _____
   DATE _____

◢ | Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2017
rev. 9.17, rel 1.18

Howard Hanna The Frederick Group, 3500 Winchester Road, Suite 201 Allentown PA 18104
Phone: 6103104856          Fax: 8886133585          Christine Thierry
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

5400 Camp Meeting

Exhibit "B"

23

# Magisterial District Judge 03-2-11

## DOCKET

Docket Number: MJ-03211-LT-0000446-20

## Landlord/Tenant Docke

Christine M. Thierry
v.
Elyssa Beltran

### CASE INFORMATION

Page 1 of

| | | | |
|---|---|---|---|
| Judge Assigned: | Magisterial District Judge Nicholas E. Englesson | File Date: | 12/11/2019 |
| Claim Amount: | $1,190.00 | | |
| Judgment Amount: | $2,646.05 | Case Status: | Closed |
| | | County: | Northampton |

### CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Recovery of Real Property Hearing | 12/26/2019 | 10:00 am | | Magisterial District Judge Nicholas E. Englesson | Scheduled |

### CASE PARTICIPANTS

| Participant Type | Participant Name | Address |
|---|---|---|
| Defendant | Beltran, Elyssa | Bethlehem, PA 18015 |
| Plaintiff | Thierry, Christine M. | New York, NY 10019 |

### DISPOSITION SUMMARY

| Docket Number | Plaintiff | Defendant | Disposition | Disposition Date |
|---|---|---|---|---|
| MJ-03211-LT-0000446-2019 | Christine M. Thierry | Elyssa Beltran | Judgment for Plaintiff | 12/26/2019 |

### CIVIL DISPOSITION / JUDGMENT DETAILS

Disposition Date: 12/26/2019

Monthly Rent: $1,190.00

| Defendant(s) | Plaintiff(s) | Disposition | Joint/Several Liability | Individual Liability | Net Judgment |
|---|---|---|---|---|---|
| Elyssa Beltran | Christine M. Thierry | Judgment for Plaintiff | $0.00 | $2,646.05 | $2,646.05 |

| Judgment Components: Type | Amount | Deposit Amount | Adjusted Amount |
|---|---|---|---|
| Rent in Arrears | $2,499.00 | $0.00 | $2,499.00 |
| Costs | $147.05 | $0.00 | $147.05 |

* Is Joint/Several

**Civil Disposition Details:**

Grant possession.

| | |
|---|---|
| Grant possession if money judgment is not satisfied by the time of eviction. | Yes |
| | No |

MDJS 1200

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data , errors or omissions on these docket sheets.  You should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.

Printed: 06/29/2021  12:37 pm

# Magisterial District Judge 03-2-11

## DOCKET

Docket Number: MJ-03211-LT-0000446-2(

## Landlord/Tenant Dock



Christine M. Thierry
v.
Elyssa  Beltran

Page 2 o

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 12/27/2019 | Entry of Satisfaction Entered by Plaintiff | Christine M. Thierry | Elyssa Beltran, Defendant |
| 12/26/2019 | Judgment for Plaintiff | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/26/2019 | Judgment Entered | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/12/2019 | Landlord/Tenant Complaint Successfully Served | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/11/2019 | Landlord/Tenant Complaint Issued via Hand Delivery | Magisterial District Court 03-2-11 | Elyssa Beltran, Defendant |
| 12/11/2019 | Landlord/Tenant Complaint Filed | Christine M. Thierry | |

### DOCKET ENTRY INFORMATION

MDJS 1200

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data , errors or omissions on these docket sheets.  You should verify that the information is accurate and current by personally consulting the official record reposing in the court wherein the record is maintained.

Page 2 of 2

Printed: 06/29/2021  12:37 pm